IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

GULED HASSAN DURAN (ISN 10023),
    Detainee, United States Naval Station,
    Guantánamo Bay, Cuba

                        *Petitioner*,

        v.

BARACK OBAMA,
    President of the United States
    The White House
    1600 Pennsylvania Avenue, N.W.
    Washington, DC 20500;

ASHTON CARTER,
    Secretary, United States
    Department of Defense
    1000 Defense Pentagon
    Washington, DC 20301-1000; and

NAVY REAR ADM. PETER J. CLARKE,
    Commander, Joint Task Force – GTMO
    APO AE 09360,

                        *Respondents*.

Case: 1:16-cv-02358 (G Deck)
Assigned To : Boasberg, James E.
Assign. Date : 11/30/2016
Description: Habeas Corpus/2241

---

## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Guled Hassan Duran respectfully petitions this Court for a writ of habeas corpus. The writ should be granted pursuant to 28 U.S.C. §§ 2241 and 2243, and the Court's equitable habeas powers, because Petitioner's detention violates U.S. and international law.



## THE PARTIES

1. Petitioner is a detainee at the United States Naval Station at Guantánamo Bay, Cuba. He is identified at Guantánamo by Internment Serial Number (ISN) 10023.

2. Respondent Barack Obama is President of the United States, and Commander-in-Chief of the United States Armed Forces.

3. Respondent Ashton Carter is United States Secretary of Defense.

4. Respondent Peter J. Clarke is a United States Navy Rear Admiral and Commander of Joint Task Force-Guantánamo (JTF-GTMO). He oversees the detention facility at Guantánamo.

5. Respondents have possession, custody and control of Petitioner.

## FACTUAL BACKGROUND

6. Petitioner, a citizen of Somalia, is 43 years old. He is married with children.

7. The Senate Select Committee on Intelligence (SSCI) Study of the Central Intelligence Agency's Detention and Interrogation Program, which was declassified in part in December 2014, states that Petitioner was captured in Djibouti and rendered to CIA custody in March 2004. The SSCI report provides other details about Petitioner's CIA detention, including a notation that he was among a group of "CIA detainees [who] had care delayed for serious medical issues" while in detention "[d]ue to a lack of adequate medical care at CIA detention sites and the unwillingness of host governments to make hospital facilities available."[1]

8. Petitioner was transferred to Guantánamo in September 2006, where he has since been held indefinitely and without charge.

---

[1] See http://www.feinstein.senate.gov/public/index.cfm/files/serve?File_id=7c85429a-ec38-4bb5-968f-289799bf6d0e&SK=D500C4EBC500E1D256BA519211895909.

9. Petitioner was subsequently designated for continuing indefinite detention by the Guantánamo Review Task Force established pursuant to Executive Order 13,492, § 4(c)(2), 74 Fed. Reg. 4897, 4899 (Jan. 22, 2009). He is neither approved for transfer nor designated for prosecution in any jurisdiction or forum.

10. Additional facts are alleged in a supplement to this habeas petition, filed concurrently herewith through the Court Security Office, and incorporated herein by reference.

## COUNT I

### PETITIONER'S DETENTION VIOLATES THE AUTHORIZATION FOR USE OF MILITARY FORCE

11. The government claims authority to hold Guantánamo detainees, including Petitioner, indefinitely pursuant to the Authorization for Use of Military Force ("AUMF"), Pub. L. No. 107-40, § 2(a), 115 Stat. 224, 224 (2001).[2] But the AUMF permits only the use of "necessary and appropriate force against those nations, organizations, or persons [the President] determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons, in order to prevent any future acts of international terrorism against the United States by such nations, organizations or persons." *Id.* The AUMF does not authorize the detention of anyone the government deems a terrorist or terrorist sympathizer; nor does it authorize unlimited, unreviewable detention.

12. Petitioner is not "[a] person who planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored those responsible for those attacks" within the meaning of the AUMF. National Defense Authorization Act for Fiscal Year 2012, Pub. L. No. 112-81, § 1021(b)(1), 125 Stat. 1298, 1562 (Dec. 31, 2011).

---

[2] *See* Resp'ts' Mem. Regarding the Gvt's Detention Authority Relative to Detainees Held at Guantanamo Bay, *In Re Guantanamo Bay Detainee Litigation*, No. 08-mc-442 (TFH) (D.D.C. Mar. 13, 2009) (dkt. no. 1689).

13.     Petitioner is not "[a] person who was a part of or substantially supported al-Qaeda, the Taliban, or associated forces that are engaged in hostilities against the United States or its coalition partners, including any person who has committed a belligerent act or has directly supported such hostilities in aid of such enemy forces." *Id.* § 1021(b)(2). In particular, and without limitation, the government claims that there are no "associated forces" for AUMF purposes in the Horn of Africa or anywhere outside of the Afghanistan theater, except for Al Qaeda in the Arabian Peninsula, a group with which Petitioner is not alleged to be associated.[3]

14.     Petitioner's detention is not authorized by the AUMF because he was not engaged in armed conflict against the United States in Afghanistan prior to his capture.

15.     Petitioner's detention is not authorized by the AUMF because the AUMF limits the duration of his detention. In particular, and without limitation, Petitioner's detention is arbitrary, indefinite and perpetual, and does not serve its ostensible purpose of preventing his return to the battlefield.

16.     Petitioner's detention is not authorized by the AUMF because there are geographical limits to the application of the AUMF, and the scope of the AUMF does not extend to the Horn of Africa, including Somalia and Djibouti.

## COUNT II

### PETITIONER'S DETENTION VIOLATES *HAMDI V. RUMSFELD* AND THE LAWS OF WAR

17.     The AUMF does not directly authorize detention. The Supreme Court held in *Hamdi v. Rumsfeld*, 542 U.S. 507, 521 (2004), that the power to detain may be inferred from the right to use force under "longstanding law-of-war principles." Detention is non-punitive and its

---

[3] *See, e.g.*, Stephen W. Preston, *The Legal Framework for the United States' Use of Military Force Since 9/11*, Speech Before the American Society of International Law (Apr. 10, 2015), *available at* http://www.defense.gov/News/Speeches/Speech-View/Article/606662.

sole purpose is "to prevent captured individuals from returning to the field of battle and taking up arms once again." *Id.* at 518; *id.* at 519 (although the AUMF "does not use specific language of detention," detention "to prevent a combatant's return to the battlefield is a fundamental incident of waging war" and thus permitted). Detention is authorized in the "narrow circumstances" where necessary to prevent return to the battlefield, but may last "no longer than active hostilities." *Id.* at 520.

18. The government has long acknowledged that its AUMF detention authority is informed and limited by these law-of-war principles. *See* Resp'ts' Mem. Regarding the Gvt's Detention Authority Relative to Detainees Held at Guantanamo Bay at 1, *In Re Guantanamo Bay Detainee Litigation*, No. 08-mc-442 (TFH) (D.D.C. Mar. 13, 2009) (dkt. no. 1689) ("Principles derived from law-of-war rules governing international armed conflicts, therefore, must inform the interpretation of the detention authority Congress has authorized for the current armed conflict.") (citing Geneva Conventions).

19. Petitioner's detention violates the AUMF's qualified force authorization, the Supreme Court's holding in *Hamdi v. Rumsfeld*, 542 U.S. 507, 521 (2004), and the laws of war because his detention is arbitrary, indefinite and perpetual, and does not serve its ostensible purpose of preventing his return to the battlefield.

20. Moreover, even in circumstances where detention may be "necessary and appropriate" to prevent a combatant's return to the battlefield, that justification "unravels" if the practical circumstances of the conflict, such as in Petitioner's case, are entirely unlike those that informed the development of the laws of war. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 521 (2004) ("If the practical circumstances of a given conflict are entirely unlike those of the conflicts that informed the development of the law of war, that understanding may unravel.").

21.  Whatever traditional law-of-war detention authority may have existed at the time of Petitioner's initial capture and detention has unraveled.  To the extent that an armed conflict with the Taliban, Al Qaeda or associated forces continues, which Petitioner does not concede, the practical circumstances of that conflict have become entirely unlike those of the conflicts that have informed the development of the laws of war.  No other conflict in American history has continued for more than fifteen years without foreseeable end against armed groups that did not exist at the time the conflict began, or that no longer exist, among other factors.

22.  The President has also determined that U.S. combat operations in Afghanistan have ended,[4] and any remaining conflict with Al Qaeda or its successors or franchise groups outside of Afghanistan bears no resemblance to the particular conflict in which Petitioner was initially captured and detained.

23.  If Petitioner was ever at war, that war has long ended.  Even if some armed conflict persists somewhere in the world with Al Qaeda or its successors or franchise groups, it is not the same as the conflict in which Petitioner was initially captured and detained.

## COUNT III

### PETITIONER'S DETENTION UNTIL THE END OF HOSTILITIES WOULD VIOLATE THE GENEVA CONVENTIONS BECAUSE HE IS A CIVILIAN UNDER THE LAWS OF WAR

24.  Petitioner is not detainable until the end of hostilities in any event because he is a civilian under the laws of war regardless of whether he is detained in connection with international or non-international armed conflict.

---

[4] For example, in his State of the Union Address on January 20, 2015, President Obama stated without qualification that "[t]onight, for the first time since 9/11, our combat mission in Afghanistan is over."  See https://www.whitehouse.gov/the-press-office/2015/01/20/remarks-president-state-union-address-january-20-2015.

25.     Detention until the end of hostilities is a concept that applies only to prisoners of war, which in turn is a status that exists only in international armed conflict. Petitioner is not a prisoner of war. If Petitioner is detained pursuant to an ongoing armed conflict, which he does not concede, that conflict is non-international in nature.

26.     Properly applied, international armed conflict recognizes only two categories of detainees: (a) "combatants," who are entitled to a privilege of belligerency and may become prisoners of war upon capture, and (b) "civilians," who lack combat immunity and may become internees upon capture. Anyone who is not a combatant/prisoner of war is by definition a civilian/internee, and may be held only as long as that person presents an imperative security threat. In addition, non-international armed conflicts do not contemplate a status of combatant/prisoner of war. Those armed conflicts involve only civilians, who must be charged criminally under domestic law or released.

27.     Even if the Court applies international armed conflict rules by analogy in the context of non-international armed conflict, which it should not, the Court should adopt a new detention standard and interpret AUMF detention authority by analogy to international armed conflict rules that apply to *civilians*, which are set forth in the Fourth Geneva Convention and authorize detention only for as long as a civilian presents an imperative security threat. *See* Geneva Convention (IV) Relative to the Protection of Civilian Persons in Time of War arts. 2, 78, Aug. 12, 1949, 6 U.S.T. 3516. Applying this standard, Petitioner must be released because he does not present an imperative security threat to anyone.

28.     Moreover, if Petitioner is not detained pursuant to any armed conflict, the laws of war do not apply to him and he must be charged criminally under domestic law or released.

29. Accordingly, regardless of the type of conflict, Petitioner is properly classified as a civilian and may not be detained until the end of hostilities.

## COUNT IV

### PETITIONER'S DETENTION VIOLATES DUE PROCESS

30. The Due Process Clause of the Fifth Amendment to the Constitution of the United States applies to prisoners held at Guantánamo, including Petitioner.

31. The Due Process Clause entitles Petitioner to greater – not lesser – process than criminal defendants who challenge their detention after a full court trial. It also entitles Petitioner to greater process than current panel decisions of the D.C. Circuit have held.

32. The Due Process Clause limits the duration of Petitioner's detention. In particular, and without limitation, Petitioner's detention violates due process because it is arbitrary, indefinite and perpetual, and does not serve its ostensible purpose of preventing his return to the battlefield.

## COUNT V

### THE COURT HAS BROAD EQUITABLE AUTHORITY AT COMMON LAW TO FASHION APPROPRIATE RELIEF AS JUSTICE AND LAW MAY REQUIRE TO REMEDY UNLAWFUL DETENTION

33. The Court has equitable, common law habeas authority to dispose of Petitioner's case as law and justice require based on the unique facts and circumstances of Petitioner's case.

34. As the length of Petitioner's non-criminal detention drags on without foreseeable end, the scope of this Court's equitable habeas review must adapt to the changed circumstances and the corresponding, increased risk of an erroneous deprivation of his liberty.

35. The Court should exercise this authority to grant Petitioner's habeas corpus petition and to fashion any and all additional relief, including declaratory or other interim relief,

necessary to effectuate Petitioner's expeditious transfer from unlawful detention. In particular, and without limitation, the Court should exercise its equitable authority to enter an order affecting the disposition of Petitioner and this case in such a way that triggers the statutory exception to the detainee transfer restrictions set forth in Section 1034 of the National Defense Authorization Act for Fiscal Year 2016, Pub. L. No. 114-92, 129 Stat. 726, 969 (Nov. 25, 2015).

\* \* \*

36. Petitioner alleges that all of the foregoing claims would apply with equal, if not greater, force if he were transferred by Respondents to the United States for continued detention.

## REQUEST FOR RELIEF

**WHEREFORE**, Petitioner respectfully requests that the Court:

A. Grant the Writ of Habeas Corpus and order Respondents to release him from unlawful detention; and

B. Order any and all additional relief necessary to effectuate his transfer from unlawful detention.

Dated: New York, NY
      November 29, 2016

                                  Respectfully submitted,

                                  /s/ J. Wells Dixon
                                  J. Wells Dixon (Pursuant to LCvR 83.2(g))
                                  Shayana D. Kadidal (D.D.C. Bar No. 454248)
                                  Omar A. Farah (Pursuant to LCvR 83.2(g))
                                  CENTER FOR CONSTITUTIONAL RIGHTS
                                  666 Broadway, 7th Floor
                                  New York, New York 10012
                                  Tel: (212) 614-6423
                                  Fax: (212) 614-6499
                                  wdixon@ccrjustice.org
                                  skadidal@ccrjustice.org
                                  ofarah@ccrjustice.org

                                  *Counsel for Petitioner Guled Hassan Duran*

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2016, I caused the foregoing habeas corpus petition, with a proposed order, to be filed with the Court via overnight mail, and served on counsel for Respondents listed below by email.

Andrew I. Warden, Esq.
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20530
Tel:  (202) 616-5084
Fax:  (202) 616-8470
Andrew.Warden@usdoj.gov

*Counsel for Respondents*

_____
J. Wells Dixon

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------------------------------- x
:
GULED HASSAN DURAN (ISN 10023),        :
:
Petitioner,          :
:
v.                    :   Civil Action No. 16-_____
:
BARACK OBAMA, *et al.*,                :
:
Respondents.         :
:
---------------------------------------------------- x

### [Proposed] ORDER

The petition for a writ of habeas corpus is GRANTED as follows:

Construing the Authorization for Use of Military Force, Pub. L. No. 107-40, § 2(a), 115 Stat. 224, 224 (2001), as interpreted by *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), and in conjunction with 28 U.S.C. § 2243, and the Court's equitable, common-law habeas authority recognized in *Boumediene v. Bush*, 553 U.S. 723 (2008), and further in order to avoid serious constitutional issues that would otherwise be raised by the petitioner's continuing indefinite detention, the Court concludes that based on the unique facts and circumstances of this particular case, the petitioner's habeas corpus petition shall be and hereby is GRANTED.

The respondents are ORDERED to release the petitioner from the U.S. Naval Station at Guantánamo Bay, Cuba.

SO ORDERED, this ___ day of _____ 2016, at Washington, D.C.

_____
United States District Judge