# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____ x
                                :

GULED HASSAN DURAN (ISN 10023),    :

                Petitioner,    :

                          :

              v.           :   Case No. 16-cv-2358 (RBW)

                          :

DONALD J. TRUMP, *et al.*,     :

                          :

            Respondents.   :

                          :
_____ x

## JOINT STATUS REPORT

The parties, by and through their undersigned counsel, respectfully submit this joint status report pursuant to the Court's September 11, 2017 minute order.  The parties explain their respective positions below.

### Petitioner's Statement

Petitioner notifies the Court of three outstanding matters in this case:

1.    <u>Motion to Enforce Protective Order and Ensure Prompt Delivery of Legal Mail</u>

On December 5, 2017, Petitioner filed a motion to enforce the protective order in this case and ensure prompt delivery of legal mail (dkt. no. 29).  The government's time to respond to the motion has not yet expired, and the motion is not fully briefed at this time.

2.    <u>Case Management Order</u>

Pursuant to Part I.A of the case management order entered on September 11, 2017 (dkt. no. 27), Respondents provided Petitioner with detainee-viewable versions of certain statements in the factual return requested by Petitioner.  Petitioner has since requested a detainee-viewable version of a portion of one additional document contained in the factual return.  Respondents are

still considering that request.  In addition, Respondents have not yet filed an unclassified version of the factual return that was previously filed on May 10, 2017.  The parties continue to meet and confer about a deadline for production of the unclassified return, which, subject to the Court's approval, they agree should be a lesser priority (in terms of the use of government resources needed to review and prepare such materials) than processing Petitioner's discovery requests.

Pursuant to Parts I.B and I.C of the case management order, Petitioner served Respondents with discovery requests on August 2, 2017.  The majority included requests for specific items or categories of exculpatory evidence.  Respondents provided a written response denying many, if not most, of Petitioner's requests, and the parties met and conferred to discuss Petitioner's requests and Respondents' response.

In the more than four months since Petitioner served his discovery requests, Respondents have produced a single responsive document.  They have also declined to provide a timeframe by which they intend to complete their search for and production of additional discovery materials.

The parties continue to meet and confer, however, and at this time, subject to the Court's approval, they agree that by February 1, 2018, Respondents should provide a timeframe by which they expect to complete their search for and production of additional discovery materials.

Depending on Respondents' proposed time frame, Petitioner reasonably anticipates that he may seek the Court's intervention to speed the completion of that production, including perhaps by moving for an order requiring Respondents to dedicate more resources to discovery in this case.  In addition, based on the meet and confer process to date, Petitioner reasonably anticipates that there will be substantial disagreements about the scope of Respondents' discovery obligations and whether or to what extent exculpatory evidence and other material

discovery may be withheld from Petitioner's counsel pursuant to Part I.D of the case management order.  These disputes will require resolution by the Court.

      3.    <u>Monitoring of Attorney-Client Communications</u>

Petitioner has requested that Respondents notify him formally as to whether any of his meetings or other communications with his counsel have been monitored, surveilled or recorded at any time by any military, law enforcement or intelligence agency or personnel in violation of the attorney-client privilege.  The basis for this request is the following:

As recently explained in another detainee habeas case, on June 14, 2017, the chief defense counsel for military commissions issued a memorandum that "advised defense counsel that he had recently received information indicating that the meeting spaces in which military commission defendants met with their lawyers could not guarantee confidentiality."  Motion for Preliminary Injunction at 4, *Al-Nashiri v. Trump*, 08-cv-1207 (RCL) (D.D.C. Nov. 1, 2017) (dkt. 279-1).  He further explained that his "loss of confidence extends to all potential attorney-client meeting locations at GTMO."  *Id.* (internal quotation marks omitted).  In response, military commission prosecutors "assured Petitioner's counsel that the intrusion issue did not affect the spaces in which Petitioner met with his counsel."  *Id.* at 5.

Since then, however, the petitioner in that case has "proffer[ed] to this Court that his counsel subsequently discovered evidence that unambiguously contradicted the prosecution's previous assurances."  *Id.* at 6.  The factual basis for this representation is apparently classified – and undersigned counsel do not know what it is – but Al-Nashiri's counsel represented to this Court that "the evidence is compelling and would provide no reasonable attorney with confidence that they could maintain attorney-client confidentiality, when meeting in such spaces."  *Id.*

Al-Nashiri's military commission trial has subsequently devolved as a result of whatever evidence his defense counsel uncovered, resulting in the withdrawal of his learned counsel and a subsequent order by the military judge holding the chief defense counsel in contempt for refusing to testify about or rescind his order permitting learned counsel to withdraw.  In addition, in an order reviewing and largely affirming the contempt finding, the convening authority for military commissions stated that he intends to

> recommend to the Joint Detention Group that a "clean" facility be designated or constructed which would provide assurances and confidence that the attorney-client meeting spaces are not subject to monitoring.  This clean facility would also be checked periodically to ensure compliance with confidentiality expectations by an independent team to ensure it remains free of listening and inappropriate monitoring devices.

Carol Rosenberg, *Pentagon Upholds Marine General's Contempt Conviction in USS Cole Legal Dispute*, Miami Herald, Nov. 22, 2017 (internal quotation marks omitted), *available at* http://hrld.us/2kvqBsO.

This recommendation and the series of events that precede it are plainly relevant to Petitioner Duran's habeas case.  They raise questions about whether current meeting spaces at Guantánamo may be "dirty"; whether attorney-detainee communications may have been monitored in violation of the attorney-client privilege; and, if so, whether any such monitoring has occurred specifically with respect to meetings and communications between Petitioner and his undersigned counsel.  Counsel have asked Respondents' counsel these questions on more than one occasion, and, although Respondents' counsel have provided general, informal assurances that no such monitoring has occurred, undersigned counsel have asked Respondents' counsel for a formal response concerning whether any such monitoring has occurred by any military, law enforcement or intelligence agency or personnel.  Respondents' counsel indicated that they would investigate this matter, but, to date, have not provided a formal response.

Petitioner's counsel may move to compel a formal response, if needed, and if improper monitoring has occurred at any time, Petitioner will seek any necessary and appropriate relief.

### Respondents' Statement

The CMO issued in this case deviates from the vast majority of other such orders issued in habeas corpus cases involving detainees at the U.S. Naval Base in Guantanamo Bay, Cuba.  In almost every other instance, the Government has been required to search only "reasonably available evidence" for exculpatory information.  These efforts in more recent cases ordinarily involve searching: (1) the consolidated assemblage of information containing all materials reviewed by attorneys that have prepared factual returns in habeas cases for Guantanamo detainees; and (2) the materials assembled by the Guantanamo Review Task Force established by Executive Order 13492.  The D.C. Circuit has concluded that the exculpatory evidence provisions in the traditional version of the CMO—including the limitation that the Government need only search for "reasonably available" exculpatory evidence—coupled with the opportunity for a petitioner to make specific discovery requests, satisfy the Supreme Court's directives with respect to Guantanamo habeas cases.  *See Bensayah v. Obama*, 610 F.3d 718, 723–24 (D.C. Cir. 2011) (citing *Boumediene v. Bush*, 533 U.S. 723, 786 (2008)).

Here, in contrast, the CMO requires the Government to dramatically widen the scope of its searches.  The CMO provides that "[t]he Government shall disclose to the petitioner all evidence"—not all "*reasonably available* evidence"—"in its possession that tends to undermine the information presented to support the government's justification for detaining the petitioner." CMO § B.1.  The Court also identified specific repositories of documents that the Government must review for exculpatory information, as well as certain types of arguably exculpatory information that must be sought out within the possession of the Central Intelligence Agency,

among other agencies.  *Id.*  The CMO did not, however, limit the Government's obligations to these enumerated requirements.  *Id.* ("This disclosure obligation includes, but is *not* limited to…") (emphasis in original).

Respondents have been diligently working to comply with the expanded requirements of the CMO.  Given the unique nature of this CMO, the Government has engaged in protracted discussions with the relevant government agencies to determine what additional searches must be conducted.  Indeed, it has been necessary to expend considerable time and resources working with the agencies to formulate efficient and comprehensive search plans.  To date, the following efforts have been completed:

· **The Central Intelligence Agency ("CIA")**: The Government submitted to the CIA a request for records akin to prudential search requests typically undertaken in connection with potential criminal prosecutions.  The request asked the CIA to provide all relevant information pertaining to Petitioner and the witnesses relied upon by Respondents in the factual return, so that Department of Justice counsel could review the information for responsiveness to disclosure obligations.  After conducting preliminary searches, the CIA has identified approximately 10,000 documents that will need to be reviewed to determine whether they contain exculpatory information or other information that must be disclosed pursuant to the CMO.  The CIA continues to refine and update its search to comply with the terms of the CMO.

· **The Federal Bureau of Investigation ("FBI")**: The FBI has conducted preliminary searches of its holdings for all information pertaining to Petitioner and the witnesses relied upon by Respondents in the factual return.  Although supplemental searches must still be completed, the FBI has identified, thus far, approximately 58,000 documents that

may need to be reviewed to confirm they are relevant to Petitioner and witnesses[1] and, if so, determine whether they contain exculpatory information or other information that must be disclosed pursuant to the CMO.

· **The Department of Defense ("DOD")**: DOD has started conducting preliminary searches of the Joint Detainee Information Management System ("JDIMS") for all information pertaining to Petitioner and the witnesses relied upon by the Government in the factual return.[2] Although additional searches still need to be performed, DOD has already identified approximately 40,000 documents that will need to be assessed or reviewed for responsiveness and, if responsive, to determine whether they contain exculpatory information or other information that must be disclosed pursuant to the CMO.

At the same time, the Government has continued its searches for exculpatory information from the materials assembled by the Guantanamo Review Task Force, in addition to searching the consolidated assemblage of files described above. The Government has reviewed for exculpatory information thousands of documents that its searches of these two collections identified as potentially relevant.

---

[1] To be clear, the Government believes that the vast majority of these documents are either not responsive or do not contain information that must be produced pursuant to the CMO. The large volume of materials is most likely attributable to, among other things, certain aliases relevant to Petitioner and witnesses that are common names. The FBI and Respondents' counsel continue to refine the searches, as well as assess approaches to winnow appropriately this significant volume of information.

[2] JDIMS is a web-based, multi-source intelligence database developed and managed by the Joint Intelligence Group to collect, analyze and disseminate military intelligence information gathered from persons detained at Guantanamo Bay; streamline detainee interrogation, control and administrative management processes; and serve as a reference tool for information regarding detainees and terrorist activities.

All exculpatory information identified from these reviews must undergo a process in which agencies with potential equities in the information need to approve or "clear" responsive documents for disclosure to Petitioner's counsel.  That is, documents must be reviewed both to ensure that any classified national security information or otherwise privileged information that cannot be disclosed to Petitioner's counsel is appropriately protected, and to ensure that information is not unnecessarily redacted from documents that are disclosed to Petitioner's counsel.  That clearance process requires considerable time, as sensitive national security information must be appraised line-by-line, and, for many documents, reviewed by multiple agencies.  In the near future, Respondents anticipate that they will be able to begin disclosing documents that have been cleared for production from the review of the Guantanamo Review Task Force materials and the consolidated assemblage of files described previously.  Although significant progress has been made in obtaining clearance with respect to such documents, additional time will also be needed to complete these efforts.

Respondents have also been responding to other issues raised by Petitioner.  First, Petitioner provided the Government with thirty individual proposed discovery requests.  The Government consulted with the relevant government agencies regarding the discovery requests, after which the parties met and conferred about the requests.  Second, the parties have discussed on several occasions the subject matter of Petitioner's Motion to Enforce Protective Order and Ensure Prompt Delivery of Legal Mail, filed on December 5, 2017.  *See* Dkt. No. 29.  The concerns raised by Petitioner prompted the Government to consult with the relevant government agencies and conduct additional fact-finding.  Respondents will file an appropriate response to the motion; that response is currently due December 19, 2017.

With regard to Petitioner's statement about the purported "monitoring of attorney-client communications," the Government provided Petitioner's counsel with relevant information by letter dated June 27, 2017.  Further, the Government hopes to provide additional information to Petitioner's counsel in the near future.  In all events, the Government takes appropriate steps to comply with the protective order governing this case (*see* Dkt. No. 6) and maintain the confidentiality of attorney-client communications consistent therewith.

The parties have conferred and they respectfully propose that they file another joint status report by February 1, 2018.  At that time, the Government expects to have progressed significantly in its searches for materials responsive to the broadened CMO, as well as to be in a position to propose a timetable for producing responsive materials.  In the interim, the parties will be litigating the motion recently filed by Petitioner involving the legal mail delivery process.

Dated:      December 11, 2017

Respectfully submitted,

/s/ J. Wells Dixon
J. Wells Dixon (Pursuant to LCvR 83.2(g))
Shayana D. Kadidal (D.D.C. Bar No. 454248)
Omar A. Farah (Pursuant to LCvR 83.2(g))
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel:  (212) 614-6423
Fax:  (212) 614-6499
wdixon@ccrjustice.org
skadidal@ccrjustice.org
ofarah@ccrjustice.org

*Counsel for Petitioner*

- and -

CHAD A. READLER
Principal Deputy Assistant Attorney General

TERRY M. HENRY

Assistant Branch Director

/s/ Stephen M. Elliott
STEPHEN M. ELLIOTT
TIMOTHY A. JOHNSON
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, DC  20530
Tel:  (202) 305-8177
Fax:  (202) 616-8470
Email: stephen.elliott@usdoj.gov

*Counsel for Respondents*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 11, 2017, I caused the foregoing joint status report to

be filed with the Court and served on counsel for Respondents listed below via the Court's

CM/ECF system.

> Stephen M. Elliott
> United States Department of Justice
> Civil Division, Federal Programs Branch
> 20 Massachusetts Ave, NW
> Washington, DC 20530
> Tel:  (202) 305-8177
> Fax:  (202) 616-8470
> Email: stephen.elliott@usdoj.gov
>
> *Counsel for Respondents*

> /s/ J. Wells Dixon
> J. Wells Dixon