# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

```
―――――――――――――――――――――――――― x
                                        :
GULED HASSAN DURAN (ISN 10023),         :
                                        :
                    Petitioner,         :
                                        :
            v.                          :      Case No. 16-cv-2358 (RBW)
                                        :
DONALD J. TRUMP, et al.,                :
                                        :
                    Respondents.        :
                                        :
―――――――――――――――――――――――――― x
```

## JOINT STATUS REPORT

The parties, by and through their undersigned counsel, respectfully submit this joint status report pursuant to the Court's December 13, 2017 minute order.  The parties explain their respective positions below.

## I.    Petitioner's Statement

Petitioner notifies the Court of three outstanding matters in this case:

1.    <u>Discovery</u>

In the six months since Petitioner served Respondents with limited discovery requests, and more than four and a half months since the Court entered a case management order requiring Respondents to produce exculpatory evidence and other discovery (dkt. no. 27), Respondents have denied many, if not most, of Petitioner's requests, and produced exactly <u>one</u> document.[1] The document is highly exculpatory, and plainly suggests that additional material likely exists that substantially undermines the evidence presented by the government to justify Petitioner's

---

[1] Respondents indicate in their statement that they have made an additional production today. Petitioner has not yet received whatever documents are included in that production.

indefinite detention.  Indeed, as its statement indicates, the government's initial searches for exculpatory evidence and other discoverable material indicate that thousands of potentially responsive materials may exist.  And although the parties have met and conferred – and will continue to do so – to help the government focus and narrow its searches, particularly concerning potential FBI material,[2] the government is not willing to provide a deadline by which it expects to complete it search for and production of material required by the case management order.  The government's statement largely addresses its searches for discoverable information, but offers no concrete proposal regarding completion of the clearance or production process.  The Court should therefore impose a deadline now.

Petitioner respectfully requests that the Court impose a deadline of <u>Friday, August 3, 2018</u>, for the government to complete its search for and production of material required by the case management order.  He also respectfully requests that the Court require the government to produce documents on a rolling basis, and file monthly status reports describing its progress toward meeting the August 3 deadline, setting forth in each report the number of potentially responsive documents reviewed, the number of documents submitted to the agencies for clearance, and the number of documents produced to Petitioner.  Respondents oppose this request as described in their statement.[3]

---

[2] It is not Petitioner's responsibility to negotiate as to how the government navigates its databases to search for responsive records, or otherwise assist the government with technological limitations that Petitioner has no ability to assess from outside the government.

[3] Given the legal mail delivery issues addressed in Petitioner's pending motion to enforce the protective order (dkt. no. 29), counsel have not discussed this proposal with Petitioner since meeting and conferring with the government about it.  Counsel will meet with Petitioner at Guantánamo on February 15, 2018, and inform the Court promptly if he objects to the proposal submitted on his behalf.

This process would allow the government a full year to comply with the case management order, which should be sufficient by any reasonable measure.  It will also allow the Court to monitor the progress of this case toward that deadline.  In addition, it is essential that the Court require the government to complete its production by a date-certain because it has become increasingly likely, based on the meet and confer process to date, that there may be substantial disagreements about the scope of Respondents' discovery obligations and whether or to what extent exculpatory evidence and other discovery may be withheld from Petitioner's counsel, which will undoubtedly require resolution by the Court via discovery motions or other litigation prior to Petitioner filing a traverse and the ultimate resolution of this case on the merits.[4]

Moreover, Petitioner should not bear the burden of further delays in obtaining exculpatory evidence and other discovery.  *See Boumediene v. Bush*, 553 U.S. 723, 780, 795 (2008) (holding "the costs of delay can no longer be borne by those who are held in custody," "[t]he detainees in these cases are entitled to a prompt habeas corpus hearing," and "the writ must be effective").  The government has chosen to rely on a certain body of evidence to detain Petitioner for more than a decade, often under horrible circumstances, and should not be granted an indefinite period of time to turn over a potentially larger body of evidence that shows his detention is unlawful.  If additional government resources are required to move this case forward

---

[4] In light of the president's recent announcement during his State of the Union address that Guantánamo will remain open, and his executive order revoking the prior administration's order to close the prison, it is increasingly clear that neither Petitioner nor any other detainee will be transferred from Guantánamo absent a court order.  *See, e.g.*, *Full Speech: Trump Defends "American Way" in State of the Union Address*, The Hill, Jan. 30, 2018 (speech transcript), available at http://bit.ly/2nvXjrY; *Presidential Executive Order on Protecting American Through Lawful Detention of Terrorists*, The White House, Jan. 30, 2018 (executive order text), *available at* http://bit.ly/2DR7jXO.  Petitioner also has not had any Periodic Review Board hearings or reviews since March 2017, and does not appear to have any upcoming proceedings scheduled at this time.  *See* Periodic Review Secretariat, Dep't of Defense, *available at* http://www.prs.mil/Review-Information/File-Review/.

expeditiously, the Court should order it.  Delay in this habeas case causes Petitioner substantive

harm, not merely procedural inconvenience, as each day that he remains in detention without

charge compounds the very harm that he filed this case in order to remedy more than a year ago.

      2.      <u>Motion to Enforce Protective Order and Ensure Prompt Delivery of Legal Mail</u>

On December 5, 2017, Petitioner filed a motion to enforce the protective order in this

case and ensure prompt delivery of legal mail (dkt. no. 29).  That motion is fully briefed and

scheduled for argument on February 21, 2018.

      3.      <u>Monitoring of Attorney-Client Communications</u>

In the parties' December 11, 2017 joint status report, Petitioner indicated that he had

requested that Respondents notify him formally as to whether any of his meetings or other

communications with his counsel have been monitored, surveilled or recorded at any time by any

military, law enforcement or intelligence agency or personnel in violation of the attorney-client

privilege.  He also explained the basis for that request is the filing.  To date, Respondents have

not responded to the request and the matter remains unresolved.  However, as indicated in the

government's statement, Respondents intend to provide a written response soon.

## II.    Respondents' Statement

### <u>New Searches in Accordance with the Case Management Order</u>

As previously explained, the Case Management Order ("CMO") issued in this case

deviates from the vast majority of other such orders issued in habeas corpus cases involving

detainees at the U.S. Naval Base in Guantanamo Bay, Cuba.  Indeed, the expanded terms of the

CMO have required Respondents to dramatically widen the scope of their searches.  Respondents

have been diligently working to comply with the requirements of the CMO, which has

necessitated protracted discussions with the relevant agencies to formulate efficient and

comprehensive search plans.  Respondents can report that the relevant agencies have completed their respective searches; the below discussion summarizes the results of those efforts.

**The Central Intelligence Agency ("CIA").**  The Government submitted to the CIA a request for records akin to prudential search requests typically undertaken in connection with potential criminal prosecutions.  The request asked the CIA to provide all relevant information pertaining to Petitioner and the witnesses relied upon by Respondents in the factual return so that Department of Justice counsel could review the information for responsiveness to disclosure obligations.  As a result of this request, the CIA has identified approximately 23,000 documents that will need to be assessed to determine whether they contain exculpatory information or other information that must be disclosed pursuant to the CMO.  The materials have been made available to Department of Justice counsel, who have started their review.

**The Federal Bureau of Investigation ("FBI").**  The FBI has conducted extensive searches of its holdings for all information pertaining to Petitioner and the witnesses relied upon by Respondents in the factual return.  These efforts have identified an overwhelming volume of potentially relevant documents—in excess of 150,000 records.  To be clear, however, the Government believes that the vast majority of these documents do not contain information that must be produced pursuant to the CMO.  Indeed, the large volume of materials is most likely attributable to, among other things, certain aliases of Petitioner and witnesses that are common names.

In addition, the Government has been limited in its ability to make further progress relating to the searches.  For example, the search protocols that have been utilized, combined with, among other things, certain technological restrictions have resulted in the capturing of large amounts of non-responsive documents pertaining to individuals with names similar to those

targeted by the searches.  In addition, limitations with regard to how the documents can be

examined would greatly expand the amount of time that would be required for Department of

Justice counsel to conduct their review of such a large volume of materials.

Respondents, therefore, have engaged Petitioner's counsel to determine whether they

may be amenable to narrowing the scope of the FBI's searches.  Respondents hope that the

parties can reach an agreement that will limit the volume of materials that must be reviewed,

while at the same time focusing the agency's efforts on those searches most likely to identify any

exculpatory information in the FBI's possession, if it exists.

**The Department of Defense ("DOD").**  DOD has finished its searches of the Joint

Detainee Information Management System ("JDIMS") for information pertaining to Petitioner,

as well as the witnesses relied upon by the Government in the factual return.[5]  DOD has

identified approximately 5,000 documents that will need to be assessed to determine whether

they contain exculpatory information or other information that must be disclosed pursuant to the

CMO.  With the exception of one of the completed searches, the materials have been made

available to Department of Justice counsel.  The remaining materials will be made available to

Department of Justice counsel shortly.

### Consolidated Assemblage and Task Force Materials

Despite the considerable amount of time and resources dedicated to the efforts described

above, Department of Justice counsel have also continued their review of: (1) the consolidated

assemblage of information containing all materials reviewed by attorneys that have prepared

---

[5]  JDIMS is a web-based, multi-source intelligence database developed and managed by the Joint
Intelligence Group to collect, analyze and disseminate military intelligence information gathered
from persons detained at Guantanamo Bay; streamline detainee interrogation, control and
administrative management processes; and serve as a reference tool for information regarding
detainees and terrorist activities.

factual returns in habeas cases for Guantanamo detainees; and (2) the materials assembled by the Guantanamo Review Task Force established by Executive Order 13492.  To date, Department of Justice counsel have already reviewed thousands of documents that its searches have identified as potentially relevant.  Respondents, however, will require additional time to complete these efforts.  The Government remains committed to producing documents to Petitioner on a rolling basis once they have been cleared for release, and Respondents made one such production to Petitioner's counsel on February 1, 2018, consisting of 16 documents.

**Respondents' Proposed Timetable**

Respondents will require a significant amount of time for Department of Justice counsel to review the large volume of potentially relevant materials.  Aside from the sheer volume of materials involved, available counsel resources for review and assessment of the materials is limited by security requirements, including security clearances and database access and training, as well as ongoing work on other Guantanamo Bay habeas corpus petitions and related cases.  Respondents propose the following timetable for their review and production of exculpatory information or other information that must be disclosed pursuant to the CMO, based on counsel's best estimates at this time:

· **CIA and DOD Materials from New Searches**: Respondents request six (6) months (August 1, 2018) for Department of Justice counsel to complete their review of the CIA and DOD materials.  In an effort to expedite the production of any exculpatory information, Respondents will submit the documents for clearance on a rolling basis.[6]  To

---

[6] As already explained, all exculpatory information identified from these reviews must undergo a process in which agencies with potential equities in the information need to approve or "clear" responsive documents for disclosure to Petitioner's counsel.  That is, documents must be reviewed both to ensure that any classified national security information or otherwise privileged information that cannot be disclosed to Petitioner's counsel is appropriately protected, and to ensure that information is not unnecessarily redacted from documents that are disclosed to

be clear, however, until the volume of exculpatory information has been ascertained, Respondents do not know how long the entirety of the clearance process will take. Respondents will produce to Petitioner's counsel exculpatory information on a rolling basis once the clearance process has been finished for a given document or set of documents.

·   **Consolidated Assemblage and Task Force Materials**:  Based on the currently available information, Department of Justice counsel anticipate that they will also be able to complete their review of the consolidated assemblage and the Task Force materials within six (6) months.  As with the CIA and DOD materials addressed above, Respondents will submit documents for clearance on a rolling basis.

·   **FBI Materials from New Searches**: The parties have agreed to continue their dialogue about ways in which Respondents can possibly narrow the scope of the FBI's review to only those materials most likely to contain exculpatory information or other information that must be disclosed pursuant to the CMO.  For the reasons discussed below, however, Respondents cannot agree to the other aspects of Petitioner's preferred approach.

### Response to Petitioner's Proposal

Petitioner proposes that within six months, the Government should: (1) finish its review of all of the materials described above—including the FBI materials; (2) complete the interagency clearance process for any documents that contain exculpatory information or other information that must be disclosed pursuant to the CMO; and (3) disclose all materials to

---

Petitioner's counsel.  That clearance process requires considerable time, as sensitive national security information must be appraised line-by-line, and, for many documents, reviewed by multiple agencies.

Petitioner.  At the same time, Plaintiff also demands that Respondents file monthly status reports to track the progress of the Government's efforts.

Petitioner has not put forth a tenable proposal.  As outlined above, the review called for under Respondents' fulsome attempt to comply with the CMO—involving searches akin to prudential search requests typically undertaken in connection with potential criminal prosecutions—requires, as an initial matter, review and assessment for responsiveness of many tens of thousands of documents.  And, of note, Petitioner's assertions that this enormous volume is indicative of the existence of actual exculpatory information relevant to the basis of Petitioner's detention asserted in this case is unsupported and, indeed, speculative.[7]  As explained above, Respondents can agree, based on their best estimates at this time, to complete their review of the CIA and DOD materials, as well as the materials from the consolidated assemblage and the Task Force, within six months.  And Respondents are hopeful that by submitting any responsive documents from this review for clearance on a rolling basis, a significant number of documents will be produced within this time period.  However, the interagency clearance process, as described in footnote 6, consumes significant time and resources, and requires documents to be reviewed line-by-line by multiple agencies.  Thus, until Respondents know the volume of materials that must be cleared, the Government cannot commit to any deadline for completion of the clearance process.

Petitioner's proposal that Respondents complete their review and clearance of the FBI materials on the same six-month timetable is particularly problematic.  Again, the FBI has identified over 150,000 potentially relevant documents, and Respondents, as outlined above,

---

[7]  Respondents also take issue with Petitioner's characterization of the arguably exculpatory document referred to in Petitioner's Statement.

have been unable to devise a more streamlined process that would satisfy the broad parameters of the CMO.  While Respondents hope that the parties can reach some sort of agreement to narrow the scope of the FBI's search, the Government cannot agree to complete its review by a specific date until the contours of such an agreement, if any, have been ascertained.

In response to Petitioner's proposal, Respondents respectfully suggest that they file another joint status report by April 1, 2018.  At that time, the Government expects to have made significant progress in its review of the materials returned by the CIA and DOD, as well as the consolidated assemblage and Task Force materials.  The parties will also have conferred and may have in place an agreement with regard to the FBI searches.  As such, Respondents will be in a better position in two months to estimate how much time they will need for the clearance process and to provide an update to the Court on the FBI materials.

<u>**Purported "Monitoring of Attorney-Client Communications"**</u>

With regard to Petitioner's statement about the purported "monitoring of attorney-client communications," the Government takes all appropriate steps to comply with the protective order governing this case, which includes maintaining the confidentiality of attorney-client communications.  *See* Dkt. No. 6.  And the Government has no reason to believe that any violation of the protective order has occurred in this case with regard to attorney-client communications.  The Government plans to send a letter to Petitioner's counsel in the near future with additional information.

Dated:        February 1, 2018

Respectfully submitted,

/s/ J. Wells Dixon
J. Wells Dixon (Pursuant to LCvR 83.2(g))
Shayana D. Kadidal (D.D.C. Bar No. 454248)
Omar A. Farah (Pursuant to LCvR 83.2(g))
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel:  (212) 614-6423
Fax:  (212) 614-6499
wdixon@ccrjustice.org
skadidal@ccrjustice.org
ofarah@ccrjustice.org

*Counsel for Petitioner*

- and -

CHAD A. READLER
Acting Assistant Attorney General

TERRY M. HENRY
Assistant Branch Director

/s/ Stephen M. Elliott
STEPHEN M. ELLIOTT
TIMOTHY A. JOHNSON
ROBERT PRINCE
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, DC  20530
Tel:  (202) 305-8177
Fax:  (202) 616-8470
Email: stephen.elliott@usdoj.gov

*Counsel for Respondents*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 1, 2018, I electronically transmitted the foregoing to the clerk of court for the United States District Court for the District of Columbia using the CM/ECF filing system.

*/s/ Stephen M. Elliott*
STEPHEN M. ELLIOTT
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 7318
Washington, D.C. 20530