IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GULED HASSAN DURAN (ISN 10023),

    *Petitioner*,

              v.

DONALD J. TRUMP, et al.,

    *Respondents*.

Civil Action No. 16-cv-2358 (RBW)

# RESPONDENTS' SUR-REPLY IN OPPOSITION TO MOTION TO COMPEL TELEPHONE ACCESS TO COUNSEL

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director

/s/ *Terry M. Henry*
Terry M. Henry
Assistant Branch Director
Kenneth E. Sealls, D.C. Bar #400633
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W., Rm. 7500
Washington, D.C. 20005
(202) 514-4107 (telephone)
(202) 616-8460 (fax)
Terry.Henry@usdoj.gov

Dated: May 22, 2020                          Attorneys for Respondents

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

ARGUMENT .......................................................................................................................... 4

    I.     THE ALTERNATIVE LEGAL MAIL PROCESS OFFERED BY
          RESPONDENTS DOES NOT CONTRAVENE THE PROTECTIVE ORDER…4

    II.    PETITIONER IS NOT ENTITLED TO RELEASE IN THE ABSENCE OF
          UNSECURE TELEPHONE CALLS WITH HIS COUNSEL ............................. 9

CONCLUSION ...................................................................................................................... 26

## TABLE OF AUTHORITIES

**Cases**

*Boumediene v. Bush*,
   553 U.S. 723 (2008) ................................................................................................. 10, 12

*Dhiab v. Trump*,
   852 F.3d 1087 (D.C. Cir. 2017) ................................................................................... 2, 10

*Schlup v. Delo*,
   513 U.S. 298 (1995) ............................................................................................................ 12

## INTRODUCTION

Petitioner's counsel seeks unsecure telephone calls with Petitioner, monitored by a member of the Department of Defense Privilege Team, while emergency measures instituted by DoD to combat the COVID-19 pandemic remain in place.  Pet. Mot. to Compel Telephone Access to Counsel ("Petitioner's Motion"), ECF No. 84.  In responding to Petitioner's Motion, Respondents previously explained that the proposed unsecure calls created intolerable risks to national security given the potential for the improper, and irremediable, disclosure of highly sensitive classified information that Petitioner possesses and that may be disclosed on such calls, even if inadvertently.  Respondents also explained why the proposed use of Privilege Team monitors would not sufficiently alleviate those risks.  *See* Resps' Opp. to Mot. to Compel Telephone Access to Counsel ("Respondents' Opposition") at 5-11, ECF No. 86.  Respondents further outlined the legal mail process made available to counsel to allow for the communication of unclassified information between Petitioner and his counsel, such as he seeks, with only minor deviations from the standard secure legal mail process—deviations that appropriately account for the challenges posed by the COVID-19 pandemic.  Respondents likewise addressed and refuted objections Petitioner's counsel raised to the alternative legal mail process, including the asserted waiver of privilege by Petitioner.  *Id.* at 11-17.  Petitioner's reply, ECF No. 87, however, goes further and asserts that the alternative legal mail process offered by Respondents contravenes the governing Protective Order as well as confidentiality concerns.  Petitioner's Reply also argues that in the absence of unsecure calls fraught with risks to national security interests, Petitioner is entitled to a habeas writ and release.  As explained below, Petitioner's arguments ignore key provisions of the Protective Order in this case and otherwise lack merit, and in all events offer no basis for Petitioner's release.  The Court should deny Petitioner's Motion to Compel.

**BACKGROUND**

Pursuant to the long-standing Protective Order in this case, all information provided by a High Value Detainee ("HVD") such as Petitioner to his counsel is presumptively classified as TOP SECRET and must be maintained in properly secured facilities and communicated in appropriately secured channels, unless and until a classification review determines that a lower level of classification is appropriate. *See* Protective Order § II.D.13.f, § II.G.21, ECF No. 5-1. For this reason, and as explained in Respondents' Opposition, an unclassified telephone call, even if monitored by the DoD Privilege Team, is *not* an appropriately secured channel for transmitting the presumptively classified information that may arise or be provided by Petitioner on such a phone call. Utilizing unsecured telephone lines for the transmission of presumptively TOP SECRET information presents intolerable risks to national security given the potential for the improper, and irremediable, disclosure of highly sensitive classified information that Petitioner possesses, even if such disclosure is inadvertent. *See* Resps' Opp. at 5-8; *see also* Protective Order § I.D.26 (prohibiting disclosure of classified information over commercial telephone line); *id*. § II.H.28 (telephone access normally not permitted); *Dhiab v. Trump,* 852 F.3d 1087, 1098 (D.C. Cir. 2017) (Government 'has a *compelling* interest in protecting . . . the secrecy of information important to our national security. . . .'") (internal citations omitted) (emphasis and alteration in original).

Accordingly, prior to the COVID-19 pandemic and emergency measures instituted by DoD in response, communications between HVDs, such as Petitioner, and their counsel occurred under the Protective Order via in-person visits by counsel at Guantanamo and through legal mail. As a result of the emergency measures put into place to counter the spread of COVID-19, including to military facilities such as Guantanamo, the typical legal mail process in cases such as Petitioner's was disrupted, given the suspension of the Defense Courier Service normally used to transfer HVD legal mail securely to and from Guantanamo. Resps' Opp. at 1-2, 11. Travel to Guantanamo by counsel to visit client detainees, however, remains possible. DoD flights to

2

Guantanamo continue as necessary, though operating on a more limited schedule, and visiting counsel, like other military and civilian personnel arriving at Guantanamo from off-island, are required to remain in quarantine for 14 days and undergo a medical screening prior to visiting a client-detainee, a necessary step to prevent the spread of COVID-19 into the detention facility and to ensure the health of detainees and Guantanamo staff alike.

In light of the challenges presented in such travel, as well as the necessary disruption in the normal legal mail process, DoD developed certain alternative measures in the normal legal mail process that would permit counsel who do not wish or are unable to travel to Guantanamo for an in-person visit to continue correspondence with their detainee-clients at the unclassified level that Petitioner's counsel seeks in Petitioner's Motion. As explained in Respondents' Opposition, the Government has offered Petitioner's counsel the option of having presumptively classified legal mail from Petitioner transferred to D.C. through properly secure email channels and then ultimately to Petitioner's counsel in unclassified form.[1] In order to determine which secure email channel is appropriate for sending a particular item of legal mail from Petitioner, an initial classification review must be done at Guantanamo, with the consent of Petitioner's counsel, by the liaison officer from the DoD classification authority in coordination with the DoD Privilege Team member at Guantanamo. *See* Resps' Opp. at 2-3, 13-15; Protective Order § II.G.22 (permitting classification review involving individuals outside Privilege Team when counsel consents). Depending on the outcome of that initial classification review, the item will be scanned and transferred to D.C. using either the Guantanamo Privilege Team member's account on a secure, classified system for handling SECRET information, or the liaison officer's account on a secure, classified system, not available to the Privilege Team in this context, for handling TOP SECRET information. All electronic files generated by the Privilege Team and

---

[1] A corresponding process is available to counsel for the transfer of unclassified legal mail from counsel to client-detainee, using email transfer from the Privilege Team in D.C. to the Privilege Team in Guantanamo, after which the mail is delivered to the client-detainee.

3

the liaison officer as part of this process will be deleted from the Privilege Team or DoD accounts, and no record copies will be retained by the Privilege Team or the DoD classification authority either in D.C. or at Guantanamo.  Resps' Opp. at 2, 14-15.

Once the material is transmitted to D.C. via the appropriate email system, Petitioner's counsel either can ask that the item of legal mail be placed in counsel's drawer in the secure habeas counsel work facility SCIF in the D.C. area, or can ask that the item be submitted for declassification review to redact classified information, if any, to create an unclassified version of the item.  The Privilege Team in D.C. would then fax the unclassified version of the item to Petitioner's counsel, which counsel could then view without traveling to the secure habeas facility, while the original, classified version of the legal mail item would also be placed in Petitioner's counsel's drawer in the secure facility SCIF.  Resps' Opp. at 2-3, 14-15.

Through this process Petitioner's counsel is permitted communication with his detainee-client at the unclassified level that counsel seeks.  And this communication is permitted without the grave and unacceptable security risks occasioned by Petitioner's proposal for unsecure calls with Petitioner.

## ARGUMENT

**I.  THE ALTERNATIVE LEGAL MAIL PROCESS OFFERED BY RESPONDENTS DOES NOT CONTRAVENE THE PROTECTIVE ORDER.**

Petitioner's reply argues that the DoD Privilege Team "is the only entity authorized by the Protective Order" to make a classification determination regarding information arising in Petitioner's case.  *See* Petr's Reply at 6-7.  Relying on this characterization of the Protective Order, Petitioner argues that the point necessarily means that the Privilege Team is authorized to monitor counsel's proposed unsecure telephone calls with Petitioner to ensure that classified information is not irretrievably spilled on such calls, *see id.* at 7-8, and that Respondents' offered legal mail process—which involves, upon consent of counsel, an initial classification review and then a declassification review of a legal mail item to permit the transfer of that mail, first from

4

Guantanamo and then to Petitioner's counsel—contravenes the Protective Order, *see id*. at 7-8, 10-11. But Petitioner mischaracterizes the Protective Order and the Privilege Team's role vis-à-vis information arising in Petitioner's case. And Petitioner's follow-on arguments necessarily likewise must fall.

As to the Privilege Team's role in this case relevant to the issues raised in Petitioner's Motion, the Protective Order provides that "[p]ending an appropriate classification review, all information provided and materials sent by a detainee to counsel . . . shall be handled and treated as classified at the TS/SCI level." Protective Order § II.G.21. As noted in Petitioner's Reply, "[c]ounsel may submit information learned from a detainee to the Privilege Team . . . for a determination of its appropriate security classification." *Id.* § II.G.22. (By long-standing practice, such "information learned from a detainee" would include, upon request from a detainee's counsel, legal mail from a detainee to counsel.) That same provision of the Protective Order, however, goes on to say,

> No information derived from these submissions shall be disclosed outside the Privilege Team pursuant to these Procedures until the Privilege Team has reviewed it for security and intelligence purposes. With counsel's consent, the Privilege Team may consult with an individual or individuals in appropriate federal agencies for the purpose of identifying classified information and marking documents with the appropriate classification. *If counsel does not consent to such consultation, information for which consultation is required will remain classified.* Absent express consent of the Court, or except as otherwise provided in these Procedures, the submissions shall not be disclosed to any person involved in the interrogation of detainee, and no such individual may make any use of those communications, nor shall the submissions be disclosed to any government personnel involved in any domestic or foreign court, military commission, or combatant status review tribunal proceedings involving the detainee.

*Id.* (emphasis added).

Accordingly, contrary to the suggestion of Petitioner's counsel, the Protective Order does not contemplate or require that the Privilege Team be the only entity conducting a classification

5

review of information arising in this case.  To the contrary, the Protective Order explicitly contemplates that the Privilege Team may very well have to consult with outside classification review authorities to appropriately identify (and in the case of written material, mark) classified information involved.  Such consultation, where needed, requires the consent of the detainee's counsel given that the Privilege Team is conferring with individuals outside the Privilege Team to facilitate a classification determination.  *See id*.  Absent such consent, however, the Privilege Team is not free, or necessarily authorized, to make its own classification determination; rather, under the Protective Order, "information for which consultation is required will remain classified," *id*., which under the terms of the Protective Order means presumptively classified at the TOP SECRET level.  *See* § II.G.21 ("Pending an appropriate classification review, all information provided and materials sent by a detainee to counsel . . . shall be handed and treated as classified at the TS/SCI level.").

As relevant to Petitioner's Motion, Respondents' Opposition explained, based on the declaration of a CIA Information Review Officer and Original Classification Authority, why the DoD Privilege Team lacks the requisite knowledge and experience to make on its own classification determinations respecting CIA-related equities in an HVD case like this.  Resps' Opp. at 8-9 & Ex. 2.  This, together with the Protective Order provisions explained above, means, first, that with respect to the unsecure telephone calls proposed by Petitioner's counsel, not only would Privilege Team monitoring of the calls be insufficient to adequately protect against the disclosure of classified information on the calls and the attendant harms to national security, Resps' Opp. at 6-9, but also that the inadequacy of the proposed Privilege Team monitoring does not contravene the Protective Order.  Indeed, the Protective Order contemplates

that the Privilege Team will not necessarily be suited or equipped to conduct all classification reviews or monitoring of information in HVD cases.[2]

Second, it means that with respect to the alternative legal mail process offered by Respondents, submission (with counsel's consent) of detainee legal mail to an outside classification review authority to make an initial classification assessment of the item's classification level (to determine which email system should be used to transfer the item to D.C. to the Privilege Team) and then to undertake a declassification review to create an unclassified version of the item for delivery to detainee's counsel, is appropriate and not in contravention of the Protective Order. Indeed, as explained above, such consultation would be necessary for a classification review given that the Privilege Team is "not equipped" to make appropriate classification determinations respecting CIA-related equities in an HVD case. *See* Resps' Opp. at 8-9. All that is occurring in the alternative legal mail process is that the consented-to classification review by an authority outside the Privilege Team is occurring in two-stages: first, to determine a classification level of the mail item so that the appropriate classified email system can be utilized to transmit the item to D.C.; and, second, to permit the declassification review necessary to create an unclassified version of the item that the Privilege Team will transmit to detainee's counsel. *See* Resps' Opp. at 2-3, 14-15.

Of course, the emailing of the mail item over the secure, classified email systems is a necessary departure from the standard legal mail process given the emergency pandemic-related restrictions currently in place disrupting classified courier service to and from Guantanamo. As

---

[2] Relatedly, Petitioner's counsel argues that Respondents' opposition to Privilege Team monitoring of the proposed HVD unsecure calls is undermined by the fact that Privilege Team members are permitted to monitor unsecure calls between detainees who are not HVDs and their counsel. Petitioner's argument should be rejected. As explained in Respondents' Opposition, non-HVD cases typically do not involve the same type of highly sensitive classified information implicating CIA equities involved in HVD cases such as Petitioner's. That highly sensitive information requires the assessment of an appropriately knowledgeable and experienced CIA information review officer. Resps' Opp. at 9 n.6.

explained in Respondents' Opposition, DoD is taking all possible actions to mitigate any risk, however small, of inadvertent or accidental compromise of privileged material via the email systems. Resps' Opp. at 3, 14-16. But if such risk should ever materialize, the Government's proposed order provides that, pursuant to Fed. R. Evid. 502(d), disclosures occurring during the alternate process would not waive privilege or protection applicable to the mail item, just as disclosures necessary to conduct the classification reviews already do not, *see* Protective Order ¶ I.D.22.

Petitioner's counsel is also incorrect in the assessment that a consented-to disclosure by the Privilege Team of a mail item to the classification review authority liaison officer at Guantanamo somehow opens the way to disclosure by the liaison officer to intelligence or other officials for use of the information against the detainee. *See* Petr's Mot. at 10-11. According to Petitioner's counsel, the liaison officer is not covered by the Protective Order or subject to a confidentiality obligation imposed by the Court. *Id.* To the contrary, however, as provided in § II.G.22 of the Protective Order, disclosures by the Privilege Team to classification review authorities outside the Privilege Team carry with them obligations on those outside authorities that prevent the very type of disclosures of which Petitioner's counsel and his expert complain. In a situation where the initial classification review by the liaison officer results in a determination that the classification level is higher than SECRET, requiring the transmission of the mail item over the email system appropriate for such higher classifications to the classification official's component in D.C. for printing and delivery to the Privilege Team in D.C.,[3] Respondents likewise view the nondisclosure obligations of § II.G.22 of the Protective Order as extending to those involved in the clerical function of receiving and printing the email and delivering it to the Privilege Team (but Respondents have no objection to the Court

---

[3] For a mail item with a classification initially assessed to be no higher than the SECRET level, the secure email transmission of the item to D.C. is handled exclusively by the Privilege Team via the Team's accounts on the relevant secure system and is subject to the nondisclosure obligations imposed on the Privilege Team by the Protective Order. *See* Resps' Opp. at 14; Protective Order § II.G.22.

8

clarifying such in its order in this matter). Further, to mitigate any risk of even an accidental compromise of the legal mail's contents, any electronic copies of the mail item on the systems of the Privilege Team or DoD's classification authority will be deleted; only metadata, transmission confirmations, and acknowledgements will be kept. *See* Resps' Opp. at 14. All of these protections are reinforced by the terms of Respondents' proposed order in this matter, which, if entered by the Court, would ensure that the use of these steps in the alternative legal mail process do not constitute a waiver of privilege. *See* Resps' Opp., Proposed Order.

For these reasons, the arguments of Petitioner's counsel for his proposed Privilege Team monitoring of unsecure telephone calls with Petitioner, as well as his arguments that Respondents' offered alternative legal mail process contravenes the Protective Order and permits the government-wide dissemination of information from Petitioner's legal mail, are baseless and should be rejected. Respondents have provided Petitioner legitimate means of having unclassified mail communications with his counsel during the pandemic emergency – means that do not waive privilege or compromise confidentiality, consistent with the Protective Order in this case. And to the extent Petitioner insists (and the Court agrees) there is ambiguity with respect to those privilege or confidentiality protections, the remedy is to further enshrine the protections in the Court's order in this matter, not to allow phone calls that are presumptively classified at the TOP SECRET level to proceed on unsecured phone lines. No good cause, therefore, exists to create the improper risks to national security that Petitioner's proposal for unsecure phone calls between Petitioner and his counsel would create.

## II. PETITIONER IS NOT ENTITLED TO RELEASE IN THE ABSENCE OF UNSECURE TELEPHONE CALLS WITH HIS COUNSEL.

Petitioner's Reply also argues that even with the process for unclassified mail communications between Petitioner and his counsel during the pandemic emergency, the communication process is insufficient for maintaining an attorney-client relationship during the pandemic emergency such that absent the unsecure telephone calls Petitioner's counsel demands,

9

the Court should issue a habeas writ requiring Petitioner's release from Guantanamo.  *See* Petr's Reply at 11-14.  Petitioner's counsel argues that without unsecure telephone calls, counsel cannot engage in "the ready back-and-forth counseling inherent in any attorney-client relationship or the sort of probing inquiry essential to any investigative enterprise," thus warranting an order of release.  *See id*. at 11.  Petitioner, however, is not entitled to a release order.  The Court cannot "disregard the dangers the detention in these cases was intended to prevent," *Boumediene v. Bush*, 553 U.S. 723, 795 (2008), nor do the practical aspects of the current proceedings in this case warrant the extreme relief counsel requests.

As an initial matter, Petitioner's appeal to the need for "probing" investigative inquiry in communications with Petitioner only serves to emphasize the likely and intolerable security risks inherent in Petitioner's proposed unsecure calls, given that information relevant to Petitioner's case is presumptively classified, *see* Resps' Opp. at 6 & n.4.

In any event, there is no practical basis for Petitioner's request that the Court, through an order of release, hold hostage the Government's "compelling interest in protecting . . . the secrecy of information important to our national security," *Dhiab,* 852 F.3d at 1098, to counsel's preferred method of communication with Petitioner.  First, DoD is not preventing in-person meetings with detainees such as Petitioner; the same process for face-to-face meetings between counsel and Petitioner as were available prior to the emergency pandemic measures, remains available today.  As explained *supra*, travel to Guantanamo by counsel to visit client-detainees remains possible.  DoD flights to Guantanamo continue as necessary, though operating on a more limited schedule.  The only alteration in the visit process is that visiting counsel, like other military and civilian personnel arriving at Guantanamo from off-island, are required to remain in quarantine at Guantanamo for 14 days and undergo a medical screening prior to visiting a client-detainee.  This is a necessary step to prevent the spread of COVID-19 into the detention facility and to ensure the health of detainees and Guantanamo staff alike.  Thus, although counsel would

have the Court believe that detainee visits are impossible, they are not, and DoD stands ready to work with counsel in this or other cases to schedule a visit with detainees as appropriate. DoD recognizes that current counsel for Petitioner, as a practical matter, may not be able or willing to travel from the New York City area, *see* ECF No. 88, to Guantanamo, but such a situation does not warrant a sanction against DoD, including one so extreme as a release order—especially where DoD is taking reasonable steps to facilitate unclassified communications between counsel and Petitioner in light of the pandemic-related challenges.

Second, the practical aspects of the current posture of this case also make clear that counsel's requested release order is neither warranted nor appropriate. Proceedings related to the merits of the case currently involve Petitioner's fully briefed discovery motion, with Respondents working to provide additional disclosures as discussed in that briefing. No other merits proceedings are currently scheduled. Thus, Petitioner counsel's complaints of "indefinite delay" of this case in the absence of his requested telephone call relief, Petr's Reply at 13-14, simply do not align with the facts at hand. Petitioner's counsel has the means at his disposal of having unclassified mail communications with his client that do not waive privilege or compromise confidentiality, and do not entail the risks to national security that Petitioner's proposal for unsecure phone calls does. Furthermore, Petitioner's counsel had a face-to-face visit with Petitioner in February of this year, just under one year since counsel's last in-person habeas-related visit with Petitioner in April 2019.[4] And, as of the date of this filing, Petitioner has not since attempted to send legal mail to his counsel, including since DoD's pandemic-related precautions went into effect. *See also* Resps' Opp. at 11. If and when Petitioner sends legal mail to his counsel, and if it is sent before the pandemic-related measures end, such mail will be available to Petitioner's counsel at the secure habeas work facility outside D.C. and

---

[4] DoD also represents that records reflect that Petitioner additionally had non-habeas visits with counsel serving as military commission defense counsel, including one of Petitioner's habeas counsel who also serves as commissions defense counsel, in October and November 2019, as well as in February 2020.

11

provided to Petitioner's counsel in unclassified form, subject to counsel consenting to the use of the alternative legal mail procedure at issue in this matter.

In sum, even if the Court's equitable habeas powers empowered the Court to order release as requested by Petitioner in the face of the Supreme Court's admonition that a court should not "disregard the dangers the detention in these cases was intended to prevent," and should "use its discretion to accommodate [the Government's interest in protecting sources and methods of intelligence gathering] to the greatest extent possible," *Boumediene*, 553 U.S. at 795-96, the current equities in this case do not warrant such relief.[5]

## CONCLUSION

For the foregoing reasons and those explained in Respondents' Opposition, the Court should deny Petitioner's motion to compel telephone access to counsel and adopt Respondents' proposed order.

---

[5] To be clear, Respondents do not agree that the cases cited by Petitioner support an exercise of habeas jurisdiction to order release in these circumstances. *See*, *e.g.*, *Schlup v. Delo*, 513 U.S. 298, 321-27 (1995) (discussing "miscarriage of justice" jurisprudence and limiting doctrine to "rare" and "extraordinary" cases where a petitioner establishes his actual innocence).

| | |
|---|---|
| May 22, 2020 | Respectfully submitted,<br><br>JOSEPH H. HUNT<br>Assistant Attorney General<br>Civil Division<br><br>ALEXANDER K. HAAS<br>Director<br><br>/s/ *Terry M. Henry*<br>Terry M. Henry<br>Assistant Branch Director<br>Kenneth E. Sealls, D.C. Bar #400633<br>Trial Attorney<br>U.S. Department of Justice<br>Civil Division, Federal Programs Branch<br>1100 L Street, N.W., Rm. 7500<br>Washington, D.C. 20005<br>(202) 514-4107 (telephone)<br>(202) 616-8460 (fax)<br>Terry.Henry@usdoj.gov<br><br>Attorneys for Respondents |