**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————— x
                                                              :
GULED HASSAN DURAN (ISN 10023),               :
                                                              :
                    Petitioner,                          :
                                                              :
          v.                                                  :    Case No. 16-cv-2358 (RBW)
                                                              :
JOSEPH R. BIDEN, JR., *et al.*,                      :
                                                              :
                    Respondents.                        :
                                                              :
———————————————————— x

<u>**MOTION FOR RULINGS ON OUTSTANDING MOTIONS**</u>

Petitioner Duran, by and through his undersigned counsel, respectfully requests that the

Court issue rulings on the parties' outstanding discovery motions so that this case may proceed

to a decision on the merits of his habeas corpus petition.[1] Petitioner has a clear and indisputable

right to this requested relief, and no other adequate means of obtaining his release from indefinite

detention—now, more than 20 years after he was abducted and never charged, and four years

after he was approved for transfer from Guantanamo. *See* 28 U.S.C. § 2243 (court shall promptly

dispose of habeas petition as law and justice require); *Boumediene v. Bush*, 553 U.S. 723, 794-95

(2008) ("While some delay in fashioning new procedures is unavoidable, the costs of delay can

no longer be borne by those who are held in custody."); *Cross v. Harris*, 418 F.2d 1095, 1105

n.64 (D.C. Cir. 1969) ("This is a habeas corpus proceeding, and thus particularly inappropriate

---

[1] The motions include: (1) Petitioner's motion for discovery, ECF Nos. 73, 114 (redacted);
(2) Respondents' cross-motion for an exception to disclosure, ECF Nos. 78, 109 (redacted); and
(3) Petitioner's motion to compel a classified deposition, ECF Nos. 149, 172-5 (redacted).

for any delay."). The parties have met and conferred, and Respondents take no position on the requested relief.

      1.      As Petitioner explained in a filing more than a year and a half ago, he is in an impossible position. *See* ECF No. 161. He has been held without charge at Guantanamo for nearly 20 years, without foreseeable end, despite his approval for transfer more than four years ago. Despite a unanimous inter-agency determination that Petitioner does not present a "continuing significant threat to the security of the United States" and a commitment to undertake "vigorous efforts" to transfer him years ago,[2] the government has not done so, and, indeed, despite various resettlement opportunities, it appears that the government has made no efforts to transfer him to any country in the last several years. The only certainty Petitioner has is that he will remain at Guantanamo, at this point potentially for life, absent a Court order granting his habeas petition. Petitioner's need for judicial relief is particularly acute because of his rapid aging and ill-heath, which require repeated, urgent medical interventions. *See*, *e.g.*, ECF No. 132, at 2 (describing Petitioner's surgeries and other medical emergencies in U.S. custody). But, as he also explained, he cannot fully and adequately litigate this habeas case until the Court rules on the parties' outstanding motions, some of which have been pending for six years.

      2.      In March 2004, more than two decades ago, Petitioner was abducted in Djibouti. In September 2006, almost two decades ago, he was transferred to Guantanamo, where he has been detained indefinitely throughout the Bush, Obama, Trump I, Biden, and Trump II presidential administrations. If Petitioner had been charged and convicted of providing material support for terrorism in federal court, which he has not—nor has he ever been charged with any

---

[2]    The decision to approve Petitioner for transfer is available at http://www.prs.mil/Portals/60/Documents/ISN10023/Subsequent%20Review%202/211110_UPR_ISN10023_SH2_FINAL_DETERMINATION.pdf.

offense—he likely would have been released years ago. *See* 18 U.S.C. § 2339A(a) (maximum 15 years of imprisonment for material support not resulting in death).

In November 2016, almost a decade ago, Petitioner filed this habeas case challenging the factual and legal basis for his continuing detention at Guantanamo. He asserted statutory claims under the September 18, 2001 Authorization for Use of Military Force ("AUMF"); constitutional claims under both the Suspension Clause and the Due Process Clause; international law claims under *Hamdi v. Rumsfeld*, 542 U.S. 507, 521 (2004), and the traditional laws of war; and claims pursuant to the Court's broad equitable, common law habeas authority. *See* ECF No. 1.

In September 2019, six years ago, Petitioner filed a discovery motion, and Respondents filed a cross-motion for an exception to disclosure, which address serious, substantive issues that impact the core of this case. *See* ECF Nos. 73, 78, 109 (redacted), 114 (redacted). The parties thereafter filed additional briefing and argued these motions and related discovery issues before the Court, including during lengthy hearings in October 2020 and August 2023. *See* ECF Nos. 105, 147; *see also* ECF No. 175 (government notice listing additional redacted discovery briefs). At the August 2023 hearing, Petitioner's counsel also argued that the Court should review and apply heightened scrutiny of any information redacted or otherwise withheld by Respondents, pursuant to *Al Hela v. Biden*, 66 F.4th 217 (D.C. Cir. 2023) (en banc). Petitioner was also permitted to address the Court directly regarding his habeas case. *See* ECF No. 148.

In addition, in July 2023, more than two years ago, Petitioner filed a motion to compel a classified deposition. *See* ECF Nos. 149, 172-5 (redacted). In response to an order of the Court, dated August 4, 2023, ECF No. 153, the parties also submitted a joint, proposed schedule regarding a forthcoming merits hearing in this case. *See* ECF Nos. 156, 158. The Court did not

enter the parties' proposed schedule, and, consequently, in an abundance of caution, Petitioner moved to amend the parties' proposed schedule in January 2024. *See* ECF No. 161.

In a sealed letter to the Court, dated February 23, 2024, Respondents provided further information to the Court regarding the parties' outstanding motions and related discovery issues. Petitioner's counsel was not informed that the Court had requested this information until they received a copy of Respondents' letter. Thereafter, on September 30, 2024, five years after Petitioner filed his discovery motion, the Court issued an order granting Petitioner's January 2024 motion to amend the scheduling order. The Court also stated that it anticipated resolving the parties' outstanding motions within 30 days absent extraordinary circumstances. *See* ECF No. 164. The Court has not ruled on the parties' outstanding motions or related discovery issues.

3.     In the intervening years, the Guantanamo landscape has changed materially. The war in Afghanistan ended more than four years ago with the withdrawal of U.S. forces from Kabul in August 2021, the Taliban now governs that country once again, and for all practical purposes the so-called "war on terror" has long since concluded. Indeed, far from circumstances in which "United States troops are still involved in active combat in Afghanistan" for purposes of authorizing detentions under the AUMF, *Hamdi*, 542 U.S. at 521, the U.S. government has recently announced its intention to return Afghan immigrants in the United States back to Afghanistan based on "notable improvements in the security and economic situation" in that country, citing specifically its determination that "Afghanistan does not pose a threat to their personal safety due to ongoing armed conflict or extraordinary and temporary conditions." Press Release, *DHS Terminating Temporary Protected Status for Afghanistan*, Dep't of Homeland Sec'y (May 12, 2025) (announcing end of Temporary Protected Status for Afghanistan based on

changed country conditions and in consultation with the Department of State), *available at* https://www.dhs.gov/news/2025/05/12/dhs-terminating-temporary-protected-status-afghanistan.

Petitioner is accordingly one of only 15 men who remain in detention at Guantanamo ostensibly pursuant to the AUMF as informed by the laws of war. Nine of those men are charged by military commissions (including two who are serving sentences and one who has been declared incompetent to stand trial), three are approved for transfer (Petitioner, a Libyan, and a stateless Rohingya), and three are not charged and waiting approval for transfer. Moreover, many counsel for Respondents at the Department of Justice who have long handled this and other Guantanamo detainee habeas cases opposite undersigned counsel are now gone, as are those senior officials within the Department of State who have been responsible for negotiating detainee transfers throughout many administrations. Indeed, undersigned counsel are informed and believe there is no one in a senior leadership position at any agency within the current administration tasked with responsibility for law-of-war detentions at Guantanamo, let alone Petitioner's transfer.

By contrast, Guantanamo is now used primarily as an offshore immigration detention facility. Since February 2025, the current administration has transferred hundreds of individuals from immigration detention facilities inside the United States to Guantanamo,[3] many of whom

---

[3] As Petitioner will address at a merits hearing, individuals held in immigration detention in the United States have full constitutional rights, and indisputably transport those rights with them to Guantanamo, which strengthens Petitioner's argument that the Due Process Clause applies to him at Guantanamo. *See*, *e.g.*, *Boumediene*, 553 at 765 (government may not "switch the Constitution on or off at will"); *see also generally Al Hela*, 66 F.4th at 248 (Pillard, J., concurring) ("It would be no more impracticable to apply the Due Process Clause than the Suspension or Ex Post Facto Clause in this context. If anything, the due process analysis is particularly well calibrated to take account of practical obstacles, given that it weighs any burdens the Government would face in providing greater process. Nor would application of the Due Process Clause be anomalous, given the Court's application of the Suspension Clause in this setting.") (internal quotation marks and citations omitted).

have been detained within the Joint Task Force—Guantanamo area of operations, in Camp VI, where law-of-war detainees were previously held, and many have subsequently been transferred back to the United States or to several third countries. Such developments continue to predominate throughout recent news headlines, and are the subject of recent class action litigation before other Judges of this Court. *See*, *e.g.*, *Suazo-Muller v. Noem*, 25-cv-418 (CJN) (D.D.C.) (challenging denial of meaningful counsel access to immigration detainees at Guantanamo); *Gutierrez v. Noem*, 25-cv-1766 (SLS) (D.D.C.) (challenging transfer of immigration detainees from the United States to, and their detention at, Guantanamo).

4.     Petitioner, however, is all but forgotten at Guantanamo.

5.     It is imperative that the Court resolve Petitioner's habeas case so his indefinite detention may finally end after more than 20 years without charge or trial. As explained more than a year and a half ago, *see* ECF No. 161, Petitioner cannot file a traverse, move for judgment on the record, or file other motions and prepare for an evidentiary hearing in this case until the Court rules on the various outstanding discovery motions. He cannot respond fully and adequately to Respondents' arguments and evidence that purportedly support his continued detention without knowing—let alone having access to, and being able to investigate and discuss with his counsel—the universe of discoverable information in this case, which has not yet been determined by the Court. This is particularly so with respect to those few, discrete discovery issues that have been the principal subject of the parties' classified briefing and argument over the last six years.

6.     For all of the foregoing reasons, Petitioner respectfully requests that the Court resolve all outstanding discovery issues, and direct the parties to confer and propose a new schedule toward the expeditious resolution of this case.

Dated:    September 24, 2025

Respectfully submitted,

/s/ J. Wells Dixon
J. Wells Dixon (Pursuant to LCvR 83.2(f))
Shayana D. Kadidal (D.D.C. Bar No. 454248)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6423
wdixon@ccrjustice.org
skadidal@ccrjustice.org

Sabrina Shroff (D.D.C. Bar No. NY0481)
80 Broad Street, 19th Floor
New York, New York 10004
Tel: (646) 763-1490
Sabrinashroff@gmail.com

Wayne J. Aaron (Pursuant to LCvR 83.2(f))
2832 Glen Ellen Drive
Flower Mound, Texas 75022
Tel: (214) 668-7735
wjaaron@tx.rr.com

*Counsel for Petitioner*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2025, I caused the foregoing motion to be filed

with the Court and served on counsel for all parties via the Court's CM/ECF system.


/s/ J. Wells Dixon
J. Wells Dixon