UNCLASSIFIED//FOR PUBLIC RELEASE

Filed with the Classified
Information Security Officer
CISO_____  _____ /
Date_____

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

GULED HASSAN DURAN (ISN 10023)  )
                                                    )
            Petitioner,         )
                                                      )
         v.                     )     Civil Action No. 1:16-cv-2358 (RBW)
                                                        )
DONALD J. TRUMP,              )
President of the United States, et al.,    )
                                                         )
         Respondents.      )
                                                         )

**MEMORANDUM OPINION & ORDER**

On November 30, 2016, the petitioner—Guled Hassan Duran—filed a petition for writ of

habeas corpus with this Court, challenging the legal and factual bases for his detention at the

United States Naval Base at Guantanamo Bay, Cuba (hereinafter "Guantanamo Bay"). See

Petition for Writ of Habeas Corpus ("Habeas Pet.") at 1, ECF No. 1. Currently pending before

the Court are: (1) the Petitioner's Motion for Discovery ("Pet'r's Disc. Mot."), ECF Nos. 73, 114

(redacted version);[1] (2) the Respondents' Motion for an Exception from Disclosure Pursuant to

Section I.D of the Case Management Order ("Resp'ts' Mot. for Exception"), ECF Nos. 78, 109

(redacted version); and (3) the petitioner's motion to compel a classified deposition of Glenn

Carle, see Petitioner's Motion to Compel Classified Deposition ("Pet'r's Dep. Mot."), ECF Nos.

149, 172-5 (redacted version). Upon consideration of the parties' submissions,[2] the Court

---

[1] Where available, the Court will cite both to the ECF number associated with the parties' notice of filing of the original classified submission, as well as the ECF number associated with the redacted version of that filing.

[2] In addition to the submissions already identified by the Court, the Court reviewed: (1) the Respondents' Combined Memorandum in Support of Their Motion for an Exception from Disclosure Pursuant to Section I.D of the Case Management Order and in Opposition to Petitioner's Motion for Discovery ("Resp'ts' Mem."), ECF Nos. 78, 109-1 (redacted version); (2) the First Declaration of ██████████████; (3) the Declaration of ████
                                                            (continued . . . )

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

concludes that it must: (1) deny the petitioner's motion for discovery; (2) grant the respondents' cross-motion for an exception to disclosure; and (3) deny the petitioner's motion to compel a classified deposition of Glenn Carle, or, in the alternative, authorization for the issuance of a subpoena for his deposition testimony.

## I.  BACKGROUND

The Court will not at this time detail in full the procedural background of this matter. However, the Court summarizes that background to the extent relevant to the Court's resolution of the parties' pending motions.

In March 2004, the petitioner was captured in Djibouti and transferred into the custody of the Central Intelligence Agency ("CIA") and interrogated at ███████████████████

---

(. . . . continued)

███████████████ ; (4) ███████████████████████████████████

███████████████████████████████ ; (5) the Respondents' Ex Parte Supplement to Their Combined Memorandum in Support of Their Motion for an Exception from Disclosure Pursuant to Section I.D of the Case Management Order and in Opposition to Petitioner's Motion for Discovery ("Resp'ts' Ex Parte Suppl."), ECF No. 79; (6) the Second Declaration of ███████████████████ ; (7) the Respondents' Second Ex Parte Supplement to Their Motion for an Exception from Disclosure Pursuant to Section I.D. of the Case Management Order ("Resp'ts' 2d Ex Parte Suppl."), ECF No. 121; (8) the Supplemental Declaration of ███████████████ ; (9) the Petitioner's Combined Reply in Further Support of His Discovery Motion, and Opposition to Respondents' Cross-Motion for an Exception to Disclosure ("Pet'r's Opp'n"), ECF Nos. 82, 114-3 (redacted version); (10) the Respondents' Reply in Support of Their Motion for an Exception from Disclosure Pursuant to Section I.D. of the Case Management Order ("Resp'ts' Reply"), ECF Nos. 83, 109-2 (redacted version); (11) the Third Declaration of ███████████████ ; (12) the Notice of Supplemental Authority in Further Support of Petitioner's Motion for Discovery and His Opposition to Respondents' Motion for an Exception to Disclosure ("Pet'r's Notice of Suppl. Auth."), ECF Nos. 142, 172-4 (redacted version); (13) the Respondents' Partial Response to the Court's October 7, 2020 Order and Notice of Withdrawal of Reliance on Certain Evidence ("Resp'ts' Partial Circumstances Resp."); (14) the Respondents' Ex Parte Response to the Court's October 7, 2020 Ex Parte Order ("Resp'ts' Ex Parte Resp."); (15) the Respondents' Further Response to the Court's October 7, 2020 Order and Notice of Withdrawal of Reliance on Certain Evidence ("Resp'ts' Further Circumstances Resp."), ECF No. 115, 172-1 (redacted version); (16) the Petitioner's Response to Respondents' Filings in Response to the Court's October 7, 2020 Order ("Pet'r's Circumstances Resp."), ECF No. 124, 172-2 (redacted version); (17) the Respondents' Reply to Petitioner's Response to Respondents' Filings in Response to the Court's October 7, 2020 Order ("Resp'ts' Circumstances Reply"), ECF No. 128, 172-3 (redacted version); (18) the Respondents' Opposition to Petitioner's Motion to Compel Classified Deposition ("Resp'ts' Dep. Opp'n"), ECF Nos. 154, 172-6 (redacted version); (19) the Petitioner's Reply Brief in Support of Motion to Compel Classified Deposition ("Pet'r's Dep. Reply"), ECF Nos. 155, 172-7 (redacted version); (20) the Respondents' Status Report Re Discovery ("Resp'ts' Status Report"), ECF Nos. 157, 172-8 (redacted version); and (21) the Transcript of Discovery Motion Before the Honorable Reggie B. Walton (Aug. 3, 2023) ("Aug. 2023 Hr'g Tr.").

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

locations before being transferred ███ to Guantanamo Bay in September 2006, where he has remained detained since that date without having ever been charged with an offense. As noted above, the petitioner brought his habeas petition in this Court in November 2016 challenging his continued detention at Guantanamo Bay. See Habeas Pet. at 1.

On September 30, 2019, the petitioner filed a "motion to compel [the government] to produce exculpatory evidence and other discovery that is relevant and material—in the sense that it is at least helpful—to [the] [p]etitioner's habeas case." Pet'r's Disc. Mot. at 1. In his motion, the petitioner requests production of four categories of evidence including, in relevant part, exculpatory evidence regarding statements made by ██████████ upon which the respondents rely in their Factual Return in support of the petitioner's detention. Relevant here, the petitioner sought exculpatory evidence and ██████████ information regarding ██████████ ████████████████████ as well as evidence regarding the circumstances under which two other ██ detainees— ██████████████ —made the statements upon which the respondents rely, see id. at 12. In regards to ████ ██████, the petitioner argues that both individuals were suffering from injuries when captured and subsequently threatened with and/or subjected to harsh treatment or torture during the time period in which they purportedly made the statements relied on by the respondents. See id. at 6–7.

On December 13, 2019, the respondents filed their combined opposition to the petitioner's motion for discovery and their motion for an exception from disclosure pursuant to the Court's September 2017 Case Management Order ("CMO"). See Resp'ts' Mot. for Exception at 1 (citing Case Management Order (Sept. 11, 2017), ECF No. 27)). In relevant part, the respondents argued that they had properly withheld certain information responsive to the

UNCLASSIFIED//FOR PUBLIC RELEASE

CMO, ███████████████████████████████████████████

███ and had complied with its obligations under the CMO to provide the petitioner all responsive information regarding the circumstances preceding and during which which ██████ ███████ made the statements upon which the respondents rely, see id. at 26–27.

On October 2, 2020, the parties appeared before the Court for a hearing on the petitioner's motion. While the parties represented that they had resolved many of the issues contained in the parties' pending discovery motions, the parties were unable to resolve their disputes regarding the petitioner's request for circumstances evidence related to statements made by ████████████████████████████████████.[3] Thus, the Court ordered that "on or before October 16, 2020, the respondents shall submit an ex parte filing to the Court, identifying the reasons as to their failure to disclose circumstances evidence as to ███████ ███." Order at 1 (Oct. 7, 2020). Furthermore, the Court ordered the respondents to file an ex parte notice indicating to the Court ███████████████████████. See id.

On October 16, 2020, the respondents filed a partial response to the Court's October 7, 2020, Order. See Resp'ts' Partial Circumstances Resp. at 1. In this response, the respondents state that "[i]n the interest of streamlining these proceedings and narrowing the scope of the issues in the case," they would "withdraw reliance on Factual Return Exhibit 37 reflecting statements by ██████." Id. at 2.

On December 18, 2020, the respondents filed a further response to the Court's October 7, 2020 Order, indicating that they had conducted additional searches and that a further review of the Factual Return exhibits had resulted in the identification of further circumstances evidence relating to ███ that they would provide to the petitioner's counsel. See Resp'ts' Further

---

[3] This Memorandum Opinion and Order only addresses what the Court believes are the matters that remain at issue in regards to the parties' cross-motions, based on the Court's internal records.

UNCLASSIFIED//FOR PUBLIC RELEASE

Circumstances Resp. at 1. Finally, the respondents "withdr[e]w reliance on Factual Return Exhibit 59 reflecting certain statements by ███." Id. at 2. Thus, on January 28, 2021, the respondents "produced to [the p]etitioner's counsel [ten] additional documents containing exculpatory information concerning ███, including a less-redacted version of [ ] Exhibits 54, 55, and 56." Pet'r's Resp. at 1.

However, the respondents also represented in their December 18, 2020 response that they had "identified information pertaining to the circumstances of ███ statements that cannot be shared with [the p]etitioner's counsel, including for national security reasons[,]" Resp'ts' Further Circumstances Resp. at 2, and thus, on February 22, 2021, the respondents supplemented their motion for an exception from disclosure, see Resp'ts' 2d Ex Parte Suppl. at 1. The petitioner then filed a response to this supplemental motion on April 9, 2021, see Pet'r's Circumstances Resp. at 1, and the respondents filed a reply on April 30, 2021, see Resp'ts' Circumstances Reply at 1. Once the parties' cross-motions and supplemental responses were fully briefed, the Court held another hearing on the motions on August 3, 2023.

Separately, on July 17, 2023, the petitioner filed a "motion to compel a classified deposition of [ ] Glenn Carle, a former CIA intelligence officer, to obtain from him exculpatory evidence and other information material to [the p]etitioner's habeas petition." Pet'r's Dep. Mot. at 1. On August 15, 2023, the respondents filed their opposition to the petitioner's motion to compel that deposition, see Resp'ts' Dep. Opp'n at 1, and on August 25, 2023, the petitioner filed his reply in support of his motion, see Pet'r's Dep. Reply at 1.

Subsequently, on September 30, 2024, the Court granted the petitioner's motion to amend the scheduling order, and continued the parties' proposed schedule governing further proceedings pending the Court's Order resolving the parties' discovery disputes, which it

5

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

"anticipate[d] issuing . . . within thirty days" of the Court's September 30, 2024, Order. See

Order at 1 n.1 (Sept. 30, 2024), ECF No. 164. However, on September 24, 2025, the Court

having not yet resolved the pending motions, the petitioner filed his motion seeking to have the

Court resolve the parties' discovery disputes and direct the parties to confer and propose a new

schedule for resolving this longstanding case, see Motion for Rulings on Outstanding Issues at 6,

ECF No. 175, which the Court granted on May 18, 2026, in light of the imminent transmission of

this Memorandum Opinion and Order to the respondents for redaction, see Order at 1 (May 18,

2026), ECF No. 179.[4]

## II. ANALYSIS

The Court will first address the still-pending issues advanced in the petitioner's motion

for additional discovery and the respondents' motion for an exception to disclosure pursuant to

the CMO. Then, the Court will address the petitioner's motion to compel a classified deposition

of Glenn Carle.

### a. The Petitioner's Motion to Compel Discovery and Respondents' Cross-Motion for an Exception to Disclosure

The Court first addresses the parties cross-motions regarding the petitioner's request for:

(1) ███████████████████████████████████████████████████████ and

(2) certain evidence of the circumstances surrounding the statements made by ███████████

on which the respondents rely in support of the petitioner's detention.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to

discovery as a matter of ordinary course." Al-Adahi v. Obama, 597 F. Supp. 2d 38, 44 (D.D.C.

---

[4] The Court regrets the lengthy delay in the issuance of this Memorandum Opinion and Order, and appreciates the petitioner's and his counsel's frustration caused by this delay, especially given the special circumstances of Guantanamo Bay habeas litigation. As the Court previously indicated, the Court is troubled by the length of the petitioner's detention without having been charged, and takes full responsibility for contributing to the unfortunate delay in resolving this long-running case, occasioned by internal chambers oversight.

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

2009) (citing Bracy v. Gramley, 520 U.S. 899, 904 (1997)). Instead, discovery in this matter is governed by the applicable provisions of the CMO. See Case Management Order at 1–3 (Sept. 11, 2017). Pursuant to the CMO, the government must "disclose to the petitioner all evidence in its possession that tends to undermine the information presented to support the government's justification for detaining the petitioner." Id. § I.B.1. That obligation includes, but is not limited to, the disclosure of evidence related to: "the process resulting in the petitioner's statements relied upon by the government[,]" id.; "the petitioner's recantations of prior statements[,]" id.; and "the petitioner's medical condition at the time he made the statements relied upon by the government in support of the petitioner's detention[,]" id. Additionally, the petitioner may be entitled to additional discovery not encompassed within the government's obligatory disclosures, so long as the petitioner's requests are

> (1) narrowly tailored, not open ended; (2) specify the discovery sought; (3) explain why the request, if granted, is likely to produce evidence that demonstrates that the petitioner's detention is unlawful[;] and (4) explain why the requested discovery will enable the petitioner to rebut the factual basis for his detention without unfairly disrupting or unduly burdening the government[.]

Id. § I.C.3 (citations omitted).

Moreover, the CMO requires the government to provide to petitioner's counsel all information to be disclosed pursuant to Sections I.B. and I.C. of the CMO, including classified information, "unless granted an exception by the Court[.]" See id. § I.D. And, the District of Columbia Circuit, in Al Odah v. United States, 559 F.3d 539 (D.C. Cir. 2009), held that a court may only compel disclosure of classified discovery in habeas proceedings if it determines that the disclosure of that information to the petitioner's counsel is necessary to the Court's ability to "conduct a meaningful review of both the cause for detention and the Executive's power to detain[,]" id. at 545 (quoting Boumediene v. Bush, 553 U.S. 723, 783 (2008)). Thus, in order to compel the disclosure of the classified information at issue in the parties' motions in this case,

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

the Court must determine that (1) the information is "both relevant and material[] in the sense that it is at least helpful to the petitioner's case[,]" id. at 544, a category which includes inculpatory and exculpatory material, see id. at 546; (2) "access by petitioner's counsel" is "necessary to facilitate the court's meaningful review of the habeas petition[,]" id.; and (3) there is no effective substitute for counsel's access to the unredacted information, short of disclosure, see id. at 547.

Regarding the first requirement—materiality—"[the District of Columbia Circuit] has held that 'classified information is not discoverable on a mere showing of theoretical relevance in the face of the government's classified information privilege[,]'" id. at 544 (quoting United States v. Yunis, 867 F.2d 617, 623 (D.C. Cir. 1989)), but rather, "the threshold for discovery in this context further requires that . . . [the] information . . . is at least 'helpful to the defense of [the] accused[,]" Yunis, 867 F.3d at 623; see United States v. Rezaq, 134 F.3d 1121, 1142 (D.C. Cir. 1998) (applying this same standard to partially classified documents). "Hence, before [this] court may compel the disclosure of classified information, it must determine that the information is both relevant and material—in the sense that it is at least helpful to the petitioner's habeas case." Al Odah, 559 F.3d at 544. And, "indications of unreliability are themselves material." Id. "For example, the court may fear, or counsel may proffer evidence, that a source is biased or that his testimony was the product of coercion." Id.

Regarding the second and third requirements—counsel's access and effective substitutes for unredacted access—a court must "conclude that access by [the] petitioner's counsel (pursuant to a court-approved protective order) is necessary to facilitate such review." Id. at 545. Moreover, the District of Columbia Circuit has previously ruled that "the combination of the government's declaration [provided to the petitioner's counsel] and [an] in camera submission

8

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

constitutes an effective substitute for unredacted access[.]" Khan v. Obama, 655 F.3d 20, 31 (D.C. Cir. 2011). Additionally, "source and method information are particularly critical within the [i]ntelligence [c]ommunity and the nation's security[.]" Mousovi v. Obama, 916 F. Supp. 2d 67, 74 (D.D.C. 2013). And, this information may be withheld from the petitioner's counsel where "the incremental value to the Court of considering that evidence, in tandem with the exceptionally grave damage to the national security that could result from the unauthorized disclosure . . . outweighs the marginal impact of withholding the information in question." Id. (internal quotation marks omitted). Ultimately, "[w]hat matters most is that the Court 'have sufficient authority to conduct a meaningful review of both the cause for detention and the Executive's power to detain[,]'" id. at 75 (quoting Boumediene, 553 U.S. at 783), and "[i]n this context, the ultimate question is whether access by [the petitioner's] counsel to Top Secret information is necessary to facilitate the Court's own meaningful review of the evidence[,]" id. (emphasis added).[5]

Access to classified information in this case is governed both by the CMO and the Amended Protective Order. See generally Second Amended Protective Order for Habeas Cases Involving Top Secret/Sensitive Compartmented Information and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, in Habeas Cases

---

[5] Although the petitioner argues that disclosure of the ███████████████████ are required by the Constitution, the District of Columbia Circuit has upheld the district court's ability to consider sensitive classified information ex parte in its merits determination, so long as the Court engages in a "rigorous review of classified substitutes, the minimization of redactions, the non-reliance on redacted material in support of detention, the minimal amount of ex parte evidence, and the close scrutiny of the reliability of ex parte evidence and all hearsay evidence." al-Hela v. Biden, 66 F.4th 217, 242 (D.C. Cir. 2023). The Court trusts that this Memorandum Opinion and Order will help clarify the extent to which the Court has reviewed certain ex parte information, and expects that the respondents' redactions of this Memorandum Opinion and Order will allow the petitioner's counsel, if not the public, to gain a fuller understanding of the Court's consideration of these materials even at this stage of the case. The Court further invites the parties to apprise the Court on any other discovery or redaction issues they have been unable to resolve, including but not limited to the status of providing a version of the Factual Return that is accessible to the petitioner and any other discovery issues requiring the Court's attention, so that the Court may expeditiously address them and move this case toward a final resolution, while engaging in the same rigorous evaluation of the respondents' redactions and evidence as contemplated by al-Hela.

9

UNCLASSIFIED//FOR PUBLIC RELEASE

Involving Top Secret/Sensitive Compartmented Information ("Am. Protective Order"), ECF No. 167. As a general matter, the CMO directs that the respondents must provide the petitioner's counsel with any information that falls within Sections I.B or I.C., even if classified, unless the Court grants the respondents' request for an exception from disclosure. See CMO § 1.D.

However, in order to access classified information, the petitioner's counsel must have the appropriate security clearance and a "need to know" the classified information, i.e., the Executive Branch must determine "that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized government function." Exec. Order 13, 526, § 4.1(a)(3), 75 Fed. Reg. 707, 729 (Dec. 29, 2009). Pursuant to the Protective Order in this case, the "petitioner's counsel is presumed to have a 'need to know' all the information in the government's possession concerning the detainee or detainees whom that counsel represents[,]" but that "[t]his presumption is overcome to the extent [that] the government seeks to withhold from a petitioner's counsel highly sensitive information or information concerning a highly sensitive source that the government presents to the Court ex parte and in camera." Am. Protective Order ¶ 28.

Here, consistent with Al Odah, the Court has reviewed in camera all of the parties' submissions, the government's ex parte submissions and declarations, and the redacted and unredacted version of the documents at issue.[6] Additionally, the Court has again reviewed the Factual Return, the Amended Factual Return, and the record in this case to ensure that the

---

[6] The petitioner argues that the Court should strike or not give any weight to the First and Second ███████ Declarations because they were not based on "actual personal knowledge of the underlying facts relevant to [the r]espondents' discovery obligations[,]" and referenced an incorrect CMO. Pet'r's Reply at 7–8. However, based on the respondents' representations and the Third ███████ Declaration, the Court is satisfied that the erroneous references to the date of issuance of the CMO in the prior ███████ declarations were merely the result of a typographical error and do not otherwise undermine the substance of those declarations. Nor, having reviewed the parties' submissions, does the Court see any other reason to strike or discredit the ███████ Declarations.

UNCLASSIFIED//FOR PUBLIC RELEASE

Court's analysis in this Memorandum Opinion and Order adequately contextualizes the parties' discovery disputes within the larger dispute over the lawfulness of the petitioner's detention.

The Court appreciates that certain circumstances have changed since the parties originally filed their motions. For example, the respondents represented at the August 2023 motion hearing that they had recently produced to the petitioner's counsel "roughly a dozen hours of audio and visually recorded statements from the petitioner[,]" Aug. 2023 Hr'g Tr. at 20:14–15, which the respondents indicated "will be a centerpiece of the evidence moving forward, and . . . have made the ████████████████ and the circumstances evidence" at issue "more of an ancillary point than they were at the time" the parties filed their original submissions, id. at 20:23–21:2. Thus, although the parties' earlier submissions made certain representations regarding the significance of the disputed information as compared to the totality of the respondents' support for detaining the petitioner, the Court is mindful that the significance of this information may be different now than when the parties filed their original briefing.

1. The ████████████████████



The Court first addresses the petitioner's motion for the disclosure of the ████████ ████ the government has identified as ████████████. ████████████████ ████████████████████████████████████ ████████ See Resp'ts' Ex Parte Resp. at 2. Although counsel for the petitioner hold clearances at the Top Secret level, thus making them eligible to access Top Secret information, the respondents have moved for an exception to disclosure of the ████████████ ████████, arguing that they are so highly sensitive that, even though the petitioner's counsel has an appropriate clearance, ████████ has determined that counsel does not have a "need-to-know" that information. See 2d ████████ Decl. ¶ 20; see also ████████ Decl. ¶ 9 (concluding the same in regards to other source-identifying information regarding ████████).

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

On the other hand, the petitioner argues that disclosure of ███████████ is required because given the respondents' disclosure of exculpatory evidence regarding ████████— including the evidence indicating ███████████████████████—██████████████ is also exculpatory "because it would allow [the p]etitioner to present additional arguments to undermine the reliability of other statements relied on by the [respondents] in the factual return." Pet'r's Mot. at 16. Similarly, the petitioner argues that the ████████████ should be disclosed because ████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████ Pet'r's Circumstances Resp. at 4. Thus, according to the petitioner, the ████████████████████ must be disclosed because that information is either exculpatory or it is material in that it would assist the petitioner's counsel in investigating and potentially interviewing ████ witnesses in order to present the Court with further exculpatory evidence to undermine the reliability of ████████ and the respondents' basis for detaining the petitioner.

As the Court indicated at the August 2023 hearing on the parties' motions, it had reviewed—and has reviewed again more recently—the Respondents' ex parte submissions, along with the information provided to the petitioners' counsel. And for the following reasons, the Court concludes that the respondents need not disclose the ████████████████ because disclosure of that information is not necessary to permit the Court "to conduct a meaningful review of both the cause for detention and the Executive's power to detain." Al Odah, 559 F.3d at 454 (quoting Boumediene, 553 U.S. at 783).

First, although the ████████████ may be material to the petitioner's case, the information which ████████ provided has already been revealed to the petitioner's counsel,

12

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

subject to certain redactions, which the Court has reviewed in camera alongside the unredacted documents to ensure that the redactions are both adequately justified and appropriately tailored to those justifications. Most relevant here, the respondents have already disclosed to the petitioner the relevant and material information about█████ ████████████████████ ████████████████████████████, which could undermine the credibility of any information derived from████████ upon which the respondents rely in support of the petitioner's detention. Thus, although disclosure of████████ "might allow [the petitioner's] counsel to sharpen any attack on████████ credibility, . . . the nature of the classified information already revealed immediately lends itself to such an attack." Mousovi, 916 F. Supp. 2d at 75.

Second, as to████████, the Court has reviewed in camera the information provided by ████████ along with the unredacted documents in order to determine whether disclosure of ████████ is necessary for meaningful review. Although the petitioner argues that disclosure of████████ is necessary because████████████████████ ████████, as indicated more fully below, the Court's in camera review of the unredacted record indicates that████████████████████████████████ ████████████████████████████████████ And, the respondents have disclaimed any reliance on statements███ made while he was in custody in ████. Further, nothing in the unredacted record indicates that███ was subjected to harsh treatment and/or torture while he was████████████.

Courts have consistently recognized that the respondents' interest in protecting intelligence sources and methods is "deserving special protection both inside and outside the arena of Guantanamo litigation." Mousovi, 916 F. Supp. 2d at 75 (listing cases). And, having

13

UNCLASSIFIED//FOR PUBLIC RELEASE

considered the parties' submissions and the respondents' ex parte submissions, including the

Second ▮▮▮▮▮▮ Declaration, the Court is satisfied that the respondents have justified the

withholding of ▮▮▮▮▮▮▮▮▮▮ for several reasons. ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Therefore, because the Court concludes that the disclosure of the ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ to petitioner's counsel are not necessary to afford "meaningful review" of the

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14

UNCLASSIFIED//FOR PUBLIC RELEASE

petitioner's detention in this case, Al Odah, 559 F.3d at 454 (quoting Boumediene, 553 U.S. at 783), and that disclosure of ███████████████ would cause exceptionally grave damage to the country's national security, the Court must grant the respondents' motion for an exception from disclosure as to the ██████████████████████ and deny the petitioner's motion for discovery to the extent that it seeks to compel the respondents to disclose the ███████████ ██████████.

### 2. Circumstances Evidence Regarding Statements Made ███████████

As previously indicated, the petitioner argues that evidence regarding the circumstances under which ████████ gave the statements on which the respondents rely in exhibits 36, 37, 42, and 43 of the Factual Return must be disclosed because ████████ was suffering from an injury at the time of his capture and was threatened with and/or subjected to harsh treatment or torture in the period between his initial capture and his subsequent transfer to the custody of the United States military at Bagram Air Base in Afghanistan. See Pet'r's Opp'n at 9–10 & n.6. The petitioner further argues that "[t]he government's withdrawal of reliance on [ ] Exhibit 37 does not obviate [the p]etitioner's request for circumstances evidence concerning ████████." Id. at 2.

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

15

UNCLASSIFIED//FOR PUBLIC RELEASE

███████████████████████████████████████████

The respondents argue that they have already produced to the petitioner's counsel any circumstances evidence they have found regarding ███████ including "medical records, interrogation plans, interrogation reports, and other information[,]" Resp'ts' Mem. at 27 & n.15, and have only withheld certain information from those records, i.e., ████████████ ██████████████ the statements he made upon which the respondents rely, see id. Nonetheless, the petitioner continues to seek the ███████████████████ and his statements to further investigate the circumstances surrounding those statements and whether they were the product of harsh treatment and/or torture. See Pet'r's Reply at 11.

First, the Court must determine whether "the classified information is material[.]" Al Odah, 559 F.3d at 548. In regards to ██████ although the respondents no longer rely on ███████ statements contained in Exhibit 37, the parties agree that "██████ remains a witness in this case[,]" Resp'ts' Circumstances Reply at 5, and thus the petitioner's request is not moot. The respondents argue that they have produced all responsive circumstances evidence in their possession regarding ████████, and although they ███████████████████████ ████████████ such information was withheld because it was not responsive to the CMO due to the fact that it is not exculpatory. See Resp'ts' Reply at 6–7.

The Court agrees with the respondents' position. The exhibits in the Factual Return on which the respondents rely represent that ████████████████████████ ██████████████████████████████████████████████ ██████. However, ██████ statements are not about the petitioner ████████, but ██████████████████████████████████████████████

UNCLASSIFIED//FOR PUBLIC RELEASE

instead ███████████████████████████████████████████. Thus, although the petitioner seeks to attack the authenticity or reliability █████████ connecting the petitioner to ██████, see Pet'r's Disc. Reply at 3–4, the Court cannot conclude that the specific information still at issue—██████████████████████ ████████████████████████—is exculpatory under the CMO, ███████████████████████████████ ████████████████ Of course, the Court will consider all of the petitioner's arguments regarding ███████ at a future merits hearing. However, because the Court concludes that the petitioner's request for the ████████████████ ████████████ are not material to the Court's review of the basis for petitioner's detention, the Court must deny the petitioner's motion for additional discovery as to this information.

### 3. Circumstances Evidence Regarding Statements Made by ████

Next, the petitioner argues that evidence regarding the circumstances under which ████ gave the statements on which the respondents rely must be disclosed because he was both suffering from grievous injuries at the time of his capture and was either threatened with or subjected to harsh treatment and/or torture around the time he allegedly made these statements. See Pet'r's Reply at 11. At bottom, the petitioner argues that this evidence must be disclosed due to "the central importance of the timing, location, and other circumstances surrounding ████ statements on which the government relies . . . , in order to test the reliability of those statements," Pet'r's Circumstances Resp. at 4, including by potentially interviewing ████ about his treatment while in custody during the time in which he made these statements. The petitioner further argues that "the government's [more] recent additional disclosures to [the p]etitioner's

UNCLASSIFIED//FOR PUBLIC RELEASE

counsel concerning ███ underscore the importance of counsel['s] access to exculpatory information withheld by the government." Id. at 3.

> For instance, the lesser-redacted versions of [ ] Exhibits 54, 55, and 56 each reveal that the evidence on which the government relies was obtained █████ and includes statements obtained from ███ in ███████████ where he was tortured.

Id. at 3–4. Specifically, the petitioner notes that one of the documents produced by the respondents indicates that ██████████████████[,] requested guidance on the use of enhanced interrogation techniques – i.e., torture – ███████████ ████████████." Id. at 4. As indicated previously, the respondents argue, and the Court agrees, that █████████████████████ and that any other information withheld is either not responsive to the CMO because it is not material to the petitioner's case, or because it is too sensitive to share with the petitioner.

Again, the Court must first determine whether "the classified information is material[.]" Al Odah, 559 F.3d at 548. Unlike ███████ statements, ██████ statements do directly implicate the petitioner, and thus, because the petitioner seeks to obtain this information in order to essentially impeach ████ statements—by arguing that they were the product of coercion and torture, see Pet'r's Circumstances Resp. at 3–4—the circumstances surrounding ██████ statements are material "in the sense that [they are] at least helpful to the petitioner's habeas case[,]" Al Odah, 559 F.3d at 544. With the exception of the statements contained in Exhibit 59, the respondents continue to rely upon ████ statements, and thus, the circumstances evidence sought by the petitioner may have a direct bearing on the reliability of these statements—a factor which the District of Columbia Circuit has found to be indicative of materiality. See id. (finding that

18

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

"indications of unreliability are themselves material[,]" e.g., "that a source is biased or that his testimony was the product of coercion").

The respondents, after conducting an additional review for potentially responsive information, have supplemented their motion for an exception from disclosure regarding some of the information contained in the records they produced to the petitioner's counsel, as well as one record in its entirety. See generally Resp'ts' 2d Ex Parte Suppl. The ▮▮▮ Declaration notes that the respondents' position is that most of the information withheld is not responsive to the CMO because the information is not exculpatory, but nonetheless articulates ▮▮▮▮▮▮ of justifications for its remaining redactions and has provided detailed comparisons to allow the Court to determine whether they have complied with their obligations under the CMO and, as to the information that is responsive to the CMO, whether they have adequately justified an exception to disclosure under the CMO. Specifically, the respondents have redacted: ▮▮▮

▮▮▮▮▮▮▮▮▮ As with the ▮▮▮▮▮▮▮▮▮, the information the respondents seek to withhold from the petitioner is classified as Top Secret and deemed Sensitive Compartmented Information, and the ▮▮▮ has determined that the petitioner's

UNCLASSIFIED//FOR PUBLIC RELEASE

counsel do not have a "need to know" the redacted information, even if responsive to the CMO.

See ▮▮▮ Decl. ¶ 9.

Based on its own review of the unredacted records, the Court concludes that much of the withheld information is not relevant and/or material to the petitioner's case, and is thus not responsive to the CMO. For the remaining information identified below, which the Court concludes may be responsive to the CMO, the Court nonetheless concludes that the respondents have justified an exception from disclosure. Sensitive to the ▮▮▮▮▮ information at issue, the Court will nonetheless briefly explain its reasoning.

Much of the potentially responsive information in these documents relates to ▮▮▮



due to the grave harm disclosure of information relating to ▮▮▮ would have on the United States' national security. This concern regarding sources and methods permeates most, if not all, of the respondents' ▮▮▮ withholdings. On the other hand, as indicated above, the petitioner argues that disclosure of the ▮▮▮ statements is required because it would indicate ▮▮▮

▮▮▮

▮▮▮ " Pet'r's

Disc. Mot. at 18.

The Court's in camera review of the unredacted documents produced by the respondents indicates that while ▮▮▮

▮▮▮



As the respondents note, the statements in question were all provided during ▇▇ time in the custody of ▇▇▇▇ and the respondents have produced to the petitioner circumstances evidence regarding ▇▇ medical condition during that same time period. And, nothing in the Court's review of the unredacted record provides any further indication of ▇▇ medical condition. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and the respondents have confirmed that they "have now withdrawn any reliance on any statements made [by ▇▇ while he was] in ▇▇▇ custody." Resp'ts' 2d Ex Parte Suppl. at 6.[11] To the extent that the ▇▇▇▇▇▇▇▇▇▇▇ may be helpful to the petitioner's case because they relate to ▇▇▇▇▇▇▇▇▇ his statements were made, the Court may consider that information in weighing the reliability of ▇▇ statements. However, the Court concludes that because there is no indication from the record that ▇▇ was mistreated during the time he was ▇▇▇▇▇▇▇▇▇▇, the information relating to the ▇▇▇ of his statements and most of the other withheld information relating to the ▇▇▇▇▇▇▇▇▇▇▇ is not exculpatory.[12]

The Court further notes that, regarding ▇▇▇▇▇▇▇▇▇▇▇▇, the respondents have provided substitutes for those ▇▇▇▇▇▇▇▇▇▇ by his name and

---

[11] Because the respondents have withdrawn all reliance on the statements ▇▇ made while in ▇▇▇ custody, the Court concludes that information relating to the CIA's relationship with the ▇▇▇▇▇▇▇ is not responsive to the CMO.

[12] Finally, the Court also agrees with the respondents that information regarding the foreign liaison relationship with ▇▇▇▇▇ is not responsive to the CMO because the Court's review of the record indicates that, upon his capture, ▇▇▇ was transferred immediately ▇▇▇▇▇▇▇▇▇▇▇ and made no statement during the short period in which he in the custody of ▇▇▇▇▇.

████████████████ which the Court concludes provides the petitioner "with the meaningful opportunity" to review information relating to ██████████ and make any arguments regarding the reliability of ████ statements. Al Odah, 559 F.3d at 548.

Thus, based on its review of each of the respondents' withholdings and redactions of these documents, the Court concludes that: (1) most of the respondents' withholdings and redactions are not responsive to the CMO; and (2) where that information is responsive, the respondents have adequately provided a justification for each category of withholdings or redactions that is grounded in the "grave damage to the national security that could result from the unauthorized disclosure[,]" Mousovi, 916 F. Supp. 2d at 74, particularly concerning "source and method information[, which] are particularly critical within the [i]ntelligence [c]ommunity and the nation's security[,]" id., and are implicated by most if not all of the respondents' justification categories. And, as the District of Columbia Circuit has concluded, in this context where the respondents have rovided an adequate justification, "the combination of the government's declaration [provided to the petitioner's counsel] and [an] in camera submission constitutes an effective substitute for unredacted access[.]" Khan, 655 F.3d at 31. Because the respondents have explained their justifications, which implicate serious national security concerns; provided disclosed redacted documents and a declaration to the petitioner; and provided the Court with unredacted copies of the documents at issue in camera, the Court concludes that granting the petitioner's request for additional discovery as to this circumstances evidence is not necessary to facilitate the Court's own "meaningful review" of the evidence. See Al Odah, 559 F.3d at 454 (quoting Boumediene, 553 U.S. at 783).

UNCLASSIFIED//FOR PUBLIC RELEASE

Accordingly, the Court concludes that it must deny the petitioner's motion for additional discovery and grant the respondents' cross-motion for an exception from disclosure of the withheld information pursuant to the Case Management Order.

**b. The Petitioner's Motion to Compel a Classified Deposition of Glenn Carle**

As indicated above, on July 17, 2023, the petitioner filed a "motion to compel a classified deposition of [ ] Glenn Carle, a former CIA intelligence officer, to obtain from him exculpatory evidence and other information material to [the p]etitioner's habeas petition." Pet'r's Dep. Mot. at 1. Specifically, the petitioner alleges that Carle is the individual referred to as ████████ in his September 20, 2018, declaration, and accordingly, it was Carle who ███████

████████████████████████████████████████████████

████████████ ' id. at 2, ████████████████ during which the petitioner "recanted his prior statements that [the r]espondents continue to rely on in the Factual Return[,]" id. According to the petitioner, ████████ also indicated to the petitioner during that time that he had "also interrogated ████████ after his capture in ████." Id. Thus, arguing that he has sufficiently established that Carle is ████████ the petitioner seeks to depose Carle on three topics: ████████████████████████ ████████████████████ upon which the respondents rely in support of his detention, as well as his subsequent recanting of those statements, id. at 3; (2) testimony regarding ███, ████████████████████████████████ ██████████████████ id.; and (3) more general testimony, based on a book Carle has written, that the petitioner contends "will provide exculpatory information that undermines the reliability of ████████████ similar to those on which [the r]espondents rely throughout the Factual Return[,]" id. The petitioner contends that the Court's intervention is

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

necessary because Carle has "remained evasive[,]" id. at 5, and the respondents have failed to make him "available for a voluntary interview[,]" id.

In response, the respondents first argue that the petitioner's requested relief is inappropriate because the "[r]espondents cannot force a former federal employee to give a voluntary interview or sit for a deposition." Resp'ts' Dep. Opp'n at 6. Thus, according to the respondents, "the Court should at most authorize a subpoena for deposition testimony." Id. The respondents further argue that that, under the Case Management Order in this case, the petitioner must show that his request for discovery "is likely to produce evidence that demonstrates that the petitioner's detention is unlawful." Id. at 7 (quoting CMO § I.C.3). The respondents argue that the petitioner has failed to carry this burden because his identification of Glenn Carle as ███



███ is based on speculation, and that,

" Id. at 9. The respondents further represent that they ███ should the Court deem it necessary. Id. In reply, the petitioner agrees that the easiest course of action would be for the Court to issue a subpoena to Carle, see Pet'r's Dep. Reply at 1, and attached a proposed subpoena with a request that the Court issue the subpoena, see id. at 1–2.

As the Court indicated at the August 3, 2023, discovery hearing, the Court agrees with the respondents that it lacks the authority to compel the respondents to make Carle, a former government employee, available for a classified deposition. See Aug. 2023 Hr'g Tr. at 53:11–15 (noting that "if an individual is not associated with a party in some way, then that party doesn't have an obligation to do anything in reference to making that individual available or providing

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

representations to that individual"). Thus, the Court must deny the petitioner's motion to the extent that it seeks to compel the respondents to make Carle available for a classified deposition.

Having concluded that it may not compel Carle's testimony, the Court now addresses the petitioner's alternative request, made in his reply, that the Court authorize the issuance of a subpoena for his testimony. See Pet'r's Dep. Reply at 1–2. Although the petitioner did not file a separate motion for the issuance of such a subpoena, in the interest of moving this case forward, and because the parties have fully briefed their respective positions as to the issuance of a subpoena to Carle, the Court will determine whether the petitioner has adequately shown that his request for the issuance of a subpoena for Carle's testimony is permissible under the CMO.

As indicated above, pursuant to the CMO, the respondents are required to provide to the petitioner any reasonably available exculpatory evidence, including "all statements, in whatever form, made or adopted by the petitioner that the government relies on to justify detention[,] and [ ] information about the circumstances in which such statements of the petitioner were made or adopted." CMO § 1.E.1. Additionally, as noted earlier, the petitioner may be entitled to additional discovery not encompassed within the government's obligatory disclosures so long as the petitioner's requests

> (1) [are] narrowly tailored, not open ended; (2) specify the discovery sought; (3) explain why the request, if granted, is likely to produce evidence that demonstrates that the petitioner's detention is unlawful[;] and (4) explain why the requested discovery will enable the petitioner to rebut the factual basis for his detention without unfairly disrupting or unduly burdening the government[.]

Id. § I.C.3 (citations omitted). However, depositions are generally unavailable to petitioners in Guantanamo Bay habeas proceedings. See, e.g., Bin Attash v. Obama, 628 F. Supp. 2d 24, 41 (D.D.C. 2009) (denying the petitioner's request for depositions of his interrogators); cf. Al-Adahi, 616 F. Supp. 2d 3, 4–5 (D.D.C. 2009) (denying the petitioner's request for information regarding the identity of translators).

UNCLASSIFIED//FOR PUBLIC RELEASE

For the following reasons, although the parties ████████████████████



████████████████████, the Court need not resolve that question because, even assuming

arguendo that the Court concluded that the petitioner had adequately established that Carle was

████████████ the Court concludes that the petitioner has failed to show that his request is

permissible under the CMO.

The Court begins with the first category of proposed testimony, ██████████████

████████████████████████████████

██████████████████████ Pet'r's Dep. Mot. at 3.  In their

opposition, the respondents emphasized that "[s]ince this case began, [the r]espondents have

disclaimed any reliance on statements made by [the p]etitioner after he was taken into custody of

[the] CIA's former [Rendition, Detention, and Interrogation ('RDI'] program."  Resp'ts' Dep.

Opp'n at 12.  Instead, the respondents represent that they intend to rely on the statements the

petitioner "made ████████ before [the] CIA took custody of [the p]etitioner into the RDI

program."  Id. (quoting Resp'ts' Mot. for Exception at 25).  The respondents represent that "they

have produced digital videos of those statements and others during the relevant time frame in

████████ complete with audio and a transcript[,]" as well as "relevant medical records and

evidence concerning treatment of [the p]etitioner[]" during that time period, with the exception

of ████████████ of the petitioner's statements.  Id. at 13.  Moreover, the respondents

represent that they "do not dispute that [the p]etitioner recanted his inculpatory statements."  Id.

at 11.

Although the petitioner argues that the Court should not rely on the respondents' ex parte

material and vague statements regarding ████████████ the Court must assess for itself

UNCLASSIFIED//FOR PUBLIC RELEASE

whether the additional discovery requested by the petitioner is justified pursuant to the CMO. The petitioner states that he was originally captured in Djibouti on March 4, 2004, when he was "suffering from severe medical distress[,]" and "lied during his interrogations because he feared [being subjected to] harm." Pet'r's Disc. Mot. at 2; see also id., Ex. A (Declaration of Petitioner Guled Hassan Duran ("Duran Decl.")) ¶¶ 5-22, ECF Nos. 73, 114-1 (redacted version). The petitioner contends that the statements he gave while in ███████ were the product of his medical condition and fear of being subjected to torture, and he represents—and the respondents do not dispute—that he subsequently recanted these statements. See Pet'r's Dep. Mot. at 2; Resp'ts' Dep. Opp'n at 2. The petitioner represents that ████████,[13] he was taken to ████████ ████ and upon his arrival, he represents that he "saw ████████ for the first time . . . ." Id. ¶ 38. Then, according to the petitioner, at some point ████████████████, he was rendered to ██████ id. ¶ 49, and shortly thereafter, ████████ purportedly arrived and the petitioner was interrogated on a daily basis, id. ¶ 55. However, the petitioner states that "[b]ecause [he] had already given [his] interrogators the information and answers they wanted while [he] was at ████████ these interrogations "essentially consisted of their requests for assistance . . . . [and] quickly dwindled to a few times a week." Id. ¶ 56.

For the following reasons, the Court concludes that, based on the petitioner's own representations and the Court's review of the relevant ex parte filings, it must deny the petitioner's motion as to this first category of proposed testimony. Specifically, the Second ████████ Declaration confirms that the petitioner's statements upon which the respondents rely were made between over the span of ████ days beginning on March █ 2004, while the

UNCLASSIFIED//FOR PUBLIC RELEASE

petitioner was ██████████ and prior to his ███ transfer to ███████████ and ████████ rendering ████████, see id. ¶¶ 65–66, where the petitioner alleges he was interrogated by ███

███ And, as required by the CMO, the respondents have provided to the petitioner not only the recordings of those statements but also records indicating the circumstances surrounding



may effectively conceal circumstances that would tend to undermine the voluntariness of statements or raise other reliability concerns[,]" id. at 7 n.7.

However, based on the circumstances evidence already provided by the respondents, and keeping in mind the fact that it is the respondents' ultimate burden to justify the petitioner's detention, the Court has no basis to conclude that the proposed testimony from Carle, assuming arguendo that he were deposed, ████████████████████████

████████████████ or the reliability of the intelligence reports and medical records detailing the petitioner's medical condition at the time he made those statements. To conclude otherwise calls for the Court to speculate as to what Carle would say on this subject, if anything at all. Further, Carle's proposed testimony regarding the petitioner's subsequent recanting of his

UNCLASSIFIED//FOR PUBLIC RELEASE

statements is not permissible under the CMO because the respondents do not dispute that he subsequently recanted certain statements. Thus, without more, the Court cannot conclude that the petitioner's request to authorize a subpoena for Carle's testimony ███████████████ ████████████████        ████████████ is permitted under the CMO, even assuming arguendo that ███████████████████████████████ ██████████.

The Court next addresses the second category of proposed testimony, i.e., testimony regarding █████████████████████████████████████ ███████████████████████████ Id. However, as the Court has previously indicated, it has reviewed the unredacted versions of the circumstances evidence regarding ██, including █████████████████████████ on which the respondents rely, and ████████ were made while ██ was ███████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████—assuming arguendo that it had sufficient information with which to conclude ████████████████—would provide the Court with any additional material information regarding the circumstances of ██ statements at the time he made those statements. Thus, the Court concludes that the petitioners' requested deposition testimony is not "likely to produce evidence that demonstrates that the petitioner's detention is unlawful." CMO § I.C.3.

Finally, the Court addresses the third category of proposed testimony, i.e., more general testimony, based on a book Carle has written, that the petitioner contends "will provide exculpatory information that undermines the reliability of ████████████ similar to

29

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

those on which [the r]espondents rely throughout the Factual Return." Pet'r's Dep. Mot. at 3. The petitioner also argues that deposing Carle would allow the petitioner to rebut the presumption of regularity generally applied to the documents on which the respondents seek to rely, because a deposition would allow Carle to "elaborate" on his "accuracy concerns with ███ ███ generally[,]" and in the context of "this case specifically . . . ." Pet'r's Dep. Reply at 8.

In other words, the petitioner seeks to have Carle provide testimony to overcome the rebuttable presumption that the respondents' documents "accurately identify the source and accurately summarize the source's statement." al-Hela v. Biden, 66 F.4th 217, 237 (D.C. Cir. 2023) (quoting Latif v. Obama, 677 F.3d 1175, 1180 (D.C. Cir. 2012) (cleaned up)). This presumption, if not rebutted, "only permits a court to conclude that the statements in a government record were actually made; it says nothing about whether those statements are true." Latif, 677 F.3d at 1185. A petitioner may successfully rebut this presumption by "demonstrat[ing] internal inconsistencies or inconsistencies with other evidence." al-Hela, 66 F.4th at 237 (citing Latif, 677 F.3d at 1185–86).

Here, the Court concludes that the petitioner has failed to offer a sufficient factual or legal basis for authorizing the subpoena pursuant to the CMO because the Court has no basis to conclude that Carle's testimony about the general accuracy of ███████ would "demonstrate internal consistencies or inconsistencies with other evidence[,]" id. (citing Latif, 677 F.3d at 1185–86), such that his compelled testimony "is likely to produce evidence that demonstrates that the petitioner's detention is unlawful[,]" CMO § I.C.3. Of course, the petitioner remains otherwise able to rigorously challenge the reliability of the ███████ upon which the respondents rely and, as previously indicated, the Court will address those arguments at a future date and as part of a rigorous analysis of the respondents' proffered

30

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

evidence in support of the petitioner's detention. Thus, for all the foregoing reasons, the Court concludes that it must deny the petitioner's motion for the issuance of a subpoena to Glenn Carle.

Accordingly, it is hereby

**ORDERED** that the Petitioner's Motion for Discovery, ECF No. 73, is **DENIED.** It is further

**ORDERED** that the Respondents' Motion for an Exception from Disclosure Pursuant to Section I.D of the Case Management Order, ECF No. 78, as supplemented by the respondents, is **GRANTED.** It is further

**ORDERED** that, as set forth in this Memorandum Opinion and Order, the respondents need not disclose to the petitioner or the petitioner's counsel the following information:



It is further

**ORDERED** that Petitioner's Motion to Compel Classified Deposition, ECF No. 149, is **DENIED.** It is further

**ORDERED** that, on or before June 25, 2026, the parties shall file a joint status report identifying any additional outstanding matters requiring the Court's attention and proposing a schedule for further proceedings. It is further

**ORDERED** that, within fourteen days after the date of this Memorandum Opinion & Order, the respondents shall complete two levels of classification review. First, they shall

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

complete one version redacting this memorandum opinion and order to the extent necessary to permit its release to the general public. Second, they shall complete a second version redacting this memorandum opinion and order to the extent necessary to permit its release to cleared counsel in accordance with the Court's legal analysis herein.

**SO ORDERED** this 22nd day of May, 2026.

REGGIE B. WALTON
United States District Judge

UNCLASSIFIED//FOR PUBLIC RELEASE